## DRAKE *vs.* REDINGTON.

Where property was bailed to another, and the bailee was to keep it till called for, and was to pay a fixed sum by the year for the use of it, it was *holden* not to be a bailment for a term of time, but a bailment terminating at the option of the bailor.

It was also *holden*, that the bailor in such case, having the right of resuming the property at any time, might maintain an action against a stranger for any tortious dispossession of the property from the bailee.

THIS is an action of trover, for the conversion of a cow, on the 6th day of May, 1836. In December, 1832, one Eli Goin made an open and public sale to the plaintiff (his mother) of the cow in question, and at the same time it was agreed that the said Goin should keep the cow *until called for* by the plaintiff, and pay her a fixed sum by the year for the use thereof. The cow was kept by said Goin, under said contract, from that time until January 12, 1836, at which

time G. B. Redington & Co. (of which firm the defendant was a member) held a mortgage upon two cows, and other property, from the said Goin, for the security of said G. B. Redington & Co's claims ; and for the purpose of having these claims discharged, the said Goin requested the defendant to come to his house and receive of the property mortgaged sufficient to satisfy these claims ; and upon being enquired of in regard to the property, said that one of the cows mortgaged had been disposed of, but that he had another which they might have as a substitute ; but it did not appear in evidence that the cow referred to by him was the one described in the plaintiff's declaration, except as hereinafter stated.

On the same day the defendant repaired to the said Goin's house, and took the only two cows of which Goin had possession, and drove them off, although his doing so was opposed by Goin. One of the cows driven off was the cow described in the plaintiff's declaration.

In the course of a day or two, the cows being in the possession of the defendant, a writ was sued out in favor of said G. B. Redington & Co., upon said claims against said Goin, and the cow above described was attached upon it, and was soon after driven to Lisbon, to be kept by one Levi Parker during the remainder of the winter, at a price agreed upon for that term between said Parker and G. B. Redington & Co.

Some time in the month of March following, the claims between said Goin and G. B. Redington & Co. were settled ; and at that time it was agreed that Goin should take the cow at said Parker's, in Lisbon, and pay G. B. Redington & Co. for her keeping, which he afterwards did.

Soon after this the cow slipped and fell upon the ice, and in consequence of the injury died in the course of five or six weeks. And immediately after her death was known at Littleton, where the parties reside, the plaintiff demanded of the defendant the cow, which he refused to give up, or pay for, alleging she was dead.

On the above statement of facts it was agreed, that if the

court should be of opinion that the action was sustained, judgment was to be rendered for the plaintiff, for twenty-three dollars, or for nominal damages, as the court should direct, with costs of suit ; otherwise, judgment was to be rendered for the defendant.

*Carleton*, for the plaintiff. In this case it is admitted by the defendant that the title and ownership of the cow in question, was, at the time she was taken by the defendant, in the plaintiff. Although the possession of the cow was in Goin, it is not pretended that that possession was such a badge of fraud in the transaction between the plaintiff and Goin, as to entitle the defendant, as a creditor, to take the cow.

The case finds that "Going should keep the cow until called for by the plaintiff."

The plaintiff then could terminate Goin's right of possession at any time she chose, whether at the end of the year or not. The terms are express ; and Goin's paying a fixed sum by the year for the use of the cow leaves no inference that the plaintiff should terminate the right at the end of a year, if at all. Hence an action of trespass or trover by the plaintiff, for an injury done the cow after the cow was called for, might have been maintained, if not before.

The possession of the cow by the defendant cannot be considered as the possession, or as coming in place of the possession, of Goin. It was against Goin's will ; he objected to it ; and it does not appear that he ever after assented to it.

*Bellows*, for the defendant, contended that the facts in the case shew a bailment of the cow to Goin, from year to year, and that the plaintiff had no right to take her away, unless she elected to do so *at the end of a year ;* and that the plaintiff could maintain neither trespass or trover for any injury done to the cow during the existence of the bailment.

At all events, at the time the cow was turned out to, or

taken by, the defendant, she was in Goin's possession by virtue of a subsisting contract of bailment ; and he was entitled to the use of it during the year, unless the plaintiff elected to put an end to the bailment. There is no pretence that such was the case.

The defendant, then, succeeded to the right of Goin, and could lawfully have retained the cow until demanded by the plaintiff.

Before any such demand was made, the cow was restored to the possession of Goin, who, as the case finds, agreed to take her at Parker's, where she was kept.

Again : Goin, in any aspect of the case, was a bailee, coupled with an interest, and could have maintained an action for any injury done to the property ; and a recovery by him would have been a bar to an action by the general owner ; so would a compromise by a bailee, founded on the return of the property.

UPHAM, J. This case is not put on the ground of a fraudulent sale of the property by Goin to the plaintiff, but it *is* contended that, at the time the property was taken, Goin was a bailee for hire, for a given period, which was unexpired ; and, that until the expiration of such time, the plaintiff, or general owner, had no right of action for the property.

This position is well sustained in law, provided the facts show a bailment of that description. 7 *D. & E.* 9, *Gordon* vs. *Harper ;* 15 *East* 607, *Smith* vs. *Plomer ;* 2 *Taunt.* 268, *Roberts* vs. *Wyatt ;* 3 *Pick.* 255, *Wheeler* vs. *Train.* Unless the bailment be terminated by some wrongful act of the bailee, as in *Sanborn* vs. *Colman,* 6 *N. H. R.* 14.

The first question, then, for consideration is, as to the time of the bailment : whether it was a bailment from year to year, or was to terminate at the pleasure of the bailor. The agreement was that the bailee "was to keep the cow till called for, and was to pay a fixed sum by the year for the use of her." This is a bailment for hire ; but the time of its

termination admits of doubt. Any construction placed upon it should furnish a general rule as to the termination of all bailments of this class, where similar conditions are made. If an individual contracts to work in the construction of given articles, until they shall be called for, to be paid a fixed sum by the year ; or if an individual contracts to work for another as long as he shall need him, to be paid a given sum by the year, the contract would be similar to the present, and should be governed by the same rule of construction.

In each of these cases the election of the party to terminate the bailment, or hire, is so distinctly provided for, that we think it cannot be overruled, except the necessary construction of the subsequent clause in the agreement compels it. The provision that payment of a given sum shall be by the year, may very readily admit of the construction that it is to be *after that rate* per year. A note payable on demand, with a given sum of interest annually, could hardly be said to be payable only at the end of the year.

The latter portion of the agreement, as to payment, in the case now in suit, does not necessarily overrule the express provision that the property was to remain "until called for." We hold it, therefore, to have been a mere bailment, to terminate at the option of the plaintiff.

On such construction the question then arises, whether the plaintiff may at any time commence a suit against a stranger for wrongful acts to property thus bailed ?

The bailment, though for hire, is strongly analogous to a gratuitous loan of an article of property, which may be terminated at the option of the bailor.

Where the loan is merely gratuitous, trover will lie in favor of the owner against the wrongful acts of a stranger, because the bailee is considered in such cases as the mere servant of the owner ; and, in contemplation of law, the owner has the possession as against a wrong-doer. 2 *Camp.* 465, *Lotan* vs. *Cross ;* and this may be well holden, though trover will not lie against a bailee on a gratuitous loan until after demand

and refusal. 9 *Johns.* 361, *Brown* vs. *Cook.* The wrongful act of a stranger is different, and is a conversion both as against the bailor and bailee. *Story on Bailments* 191.

We see no rule why a letting for hire, where the bailor has a right to call for the property at any moment, should cause any different rule as to a right of action. In *Story on Bailments* 262, it is said, " that the bailee for hire has a spe-' cial property in the article hired, while the contract con-' tinues, and may maintain an action for any tortious dispos-' session of the property ; but in such case the owner has also ' a general property, unless he has, by virtue of his agree-' ment, parted with it for a time ; and may also maintain a ' like suit against a stranger."

The hiring is not considered by this authority as precluding a suit in favor of the owner, unless it be for a term. When the property is not put out for a term, but may be resumed at any time by the bailor, we understand it to be conceded that the owner has the general property, and may maintain trover.

In *Hart* vs. *Hyde*, 5 *Vt. R.* 330, it was holden, that where the owner of a stove had leased it, for a reasonable compensation, to a third person, until he should call for it, and it was taken away by a third person from the bailee, trespass would lie by the general owner, because he had the right of resuming the possession at pleasure.

We see no objection to this decision ; and it is directly in point that trover will lie in favor of this plaintiff.

In this case the conversion of the property commenced with the original taking from the bailee ; and the measure of damages to be recovered is the value of the property at that time. There is no evidence of such a return of the property as to affect the damage in any manner.

There will, therefore, be judgment for the plaintiff for the value of the property at the time of the conversion, as agreed upon.

*Judgment for the plaintiff.*