# BASSETT *v.* SALISBURY MANUFACTURING COMPANY.

A declaration alleged that the defendants by a dam caused the waters of a stream to overflow the plaintiff's land. *Held,* that an amendment by adding " and the waters falling upon and running into said land " (before " to overflow,") did not change the cause of action.

An amendment ordered at one term of the court cannot be objected to at a succeeding term. Any exception to such order must be insisted on at the same term, or it is waived.

An exception to the testimony of a witness, as to the contents of a lost deed, cannot be taken at a subsequent stage of a cause, because it then appears that the deed was recorded.

An office copy of such deed may be given in evidence, though parol evidence has been previously given of its contents.

A witness, who proves an entry on the land in controversy, made by a party claiming under a deed, may be cross examined as to the title of such party, because the amount of the damages to be recovered, may depend on the nature of his interest.

In an action for flowing land, possession under a claim of title, is *prima facic* evidence of title in fee, and entitles a party to recover for any damages done to the land.

In such cases the plaintiff is ordinarily entitled to recover some damages, if it appears that his right has been infringed ; especially where a repetition of the wrong might in time ripen into an easement or incumbrance on the land.

But if it is shown that the plaintiff's interest is of so limited a character that the supposed wrong, however injurious to the owner or reversioner, could not injure the plaintiff or his estate, he is not entitled to recover.

The presiding justice of the court of common pleas may, on application of the jury, in the absence of the parties and during the recess of the court, repeat or explain in writing his charge relating to the law applicable to the case.

CASE. The writ was dated August 17, 1847. The declaration is as follows :

In a plea of the case, for that the said Bassett, on the 19th day of April, in the year 1839, was, and ever since has been, lawfully seized and possessed of two certain tracts of peat and meadow land, situate in Kingston, in said county of Rockingham, one tract containing about thirty-three acres, and bounded westerly by land of Capt. Daniel Colcord, northerly by other land of said Bassett, which he purchased of George W. Prescott, and was formerly owned by widow Hannah Thayer, easterly by land of Capt. Daniel Colcord, jr., and others, southerly by land which was formerly the dower of widow Sarah Stearns, and which is now owned by Samuel Colcord, and which the said Thomas Bassett bought of Leonard S. Shilling, by deed dated April 17, A. D. 1839, and recorded in Rockingham Records, Lib. 293, Fol. 213 ; said other tract containing about four acres, and adjoining said first described tract, it being the same land which was conveyed by widow Hannah Thayer to the aforesaid Leonard S. Shilling, by deed dated April 12, A. D. 1839, and by said Shilling conveyed to the plaintiff, by deed dated April 17, A. D. 1839, and recorded in the Rockingham Records, Lib. 293, Fol. 213, reference thereto being had for a more particular description of the same ; of all which the said defendants were well knowing, but the said defendants, intending and contriving unjustly to injure the plaintiff, and to deprive him of the use, benefit and advantage of his said tracts of meadow land, and to hinder and prevent him, the plaintiff, from digging and cutting peat in his said tract of meadow land in so ample a manner as he had theretofore done, and of right ought to have done, and to injure and destroy the trees and shrubbery growing upon said tracts, have ever since the tenth day of March, in the year 1847, maintained and kept up and continued a mill-dam at Trickling Falls, so called, in East Kingston, in said county of Rockingham, across a river commonly called

Powow river, and by means thereof caused the water of said river, [and the water falling upon and flowing into said lands of the plaintiff,] to overflow, percolate through, and drown the aforesaid tracts of meadow land, ever since said tenth day of March, A. D. 1847, whereby the plaintiff's grass, growing on his tracts of meadow land in that time, of the value of fifty dollars, has been made worse, drowned, damnified and destroyed, and his trees and shrubbery, growing upon said tracts of meadow land, of the value of two hundred dollars, killed and destroyed; and the plaintiff has also, during the time aforesaid, thereby been prevented from digging and cutting peat in his said tracts of meadow land, and his said tracts of meadow land have been made spongy, rotten and impassable, and the plaintiff has been, during all that time, deprived of the use and enjoyment of his said tracts of meadow land, and of all the benefit, profit, gains and advantages which he otherwise might and would have made thereupon; to the damage of the said Bassett, as he says, the sum of one thousand dollars.

The part inclosed in bracketts was added by an amendment at the September term, 1852. The clerk's docket at that term shows that the amendment was allowed, on terms to be settled. When the amendment was offered, it was objected, that it was for a new cause of action, but the amendment was allowed. At this term the defendants' counsel again objected, that the amendment introduced a new cause of action, and stated that they understood that the amendment was allowed subject to their exception. The court have no minute of any exception to the ruling allowing the amendment, and do not recollect whether the ruling of the September term was excepted to or not. The jury at that term did not agree, and the action was continued. When the same objection was made at this term, the court ruled that the amendment must now be considered as a part of the declaration, and be treated as such.

The plaintiff claimed title by virtue of a deed from Leon-

ard S. Shilling, in 1839, and an entry under it. His counsel stated to the court that this deed had been lost, and so they must introduce secondary evidence of its contents, and read affidavits, proving that the deed once existed, but had been lost, and that one of the subscribing witnesses was dead, and the other had gone to some of the western States. They then called Shilling as a witness. He testified that about the year 1839, he executed to the plaintiff a deed of the land described in the writ, which was witnessed by one Shaw, who has since deceased, and one Parker, who had moved to the west before the trial, and was acknowledged before William Badger, Esq., and that Bassett soon after entered upon the parcels, and cut peat on them, and built a peat house upon one of them ; and the witness also testified at length in relation to the effect of the defendants' dam upon said land. No exception was taken to his evidence, until sometime after he left the stand, and in a subsequent stage of the trial, when the defendants' counsel objected to it as incompetent, inasmuch as the deed had been recorded, and said that they supposed that the testimony was addressed to the court simply. The court ruled that the contents of the deed had been legally proved, but that the defendants' counsel might have the office copy read, if they desired it. But they objected to the competency of the evidence without the copy, and also objected to the introduction of the copy. The plaintiff's counsel put the copy in evidence subject to exception.

Upon the cross examination of Shilling, the defendants' counsel proposed to inquire of him, if he ever had any title to the land, other than that acquired by the deed of Hannah Thayer to him, and when and by whom, if ever, the deed from her was delivered to him. The plaintiff's counsel objected to these questions, as incompetent and irrelevant, and the court ruled that as the case then appeared the questions were irrelevant, for the plaintiff's possession under his deed gave him a *prima facie* title, whether his grantor had any or

not. The defendants' counsel then desired a ruling whether it would be competent to prove a title in a third person as an answer to the action, but the court declined making any ruling on that subject, until there should be some evidence at hand requiring one.

The plaintiff's counsel, in opening their cause, admitted that the defendants had a right to keep the water as high as it had been kept during twenty years prior to the date of the writ. The defendants introduced no evidence of title, except as to the height of the water during said period. Formerly the water was drawn off at the mill on the 12th of May, and thus remained until the 20th of October, and between the 20th of October and the 12th of May it was kept up, but the evidence was conflicting, whether it was kept as high then as since or not. Hence, as to the periods of time from the 12th of May to the 20th of October, the fact of injury to the land by means of the dam was the question between the parties; and as to the periods of time, from the 20th of October to the 12th of May, the fact of injury and the right to injure, were both in controversy.

The court charged the jury in substance as follows:

The law is that each proprietor upon a stream, or its branches, has a right to have the water flow in its natural course, subject to such reasonable use as the law permits, as the water flows along. Consequently the defendants, without some deed, grant or license, or a twenty years user, had no right to cause the waters of the Powow river, or of the streams falling into it, to flow back, or remain back upon the plaintiff's land, farther or longer than they otherwise would. If the defendants, by means of their dam, have actually caused back water upon the plaintiff's land, or if they have actually and perceptibly kept water upon it; or, in other words, if his land had been made or kept wetter, (substantially and visibly so,) than it would have been but for the dam, he is entitled to at least nominal damages, and to such actual damages as you believe he has sustained,

unless the defendants prove a right in some of the ways suggested. The law in the case supposed, presumes some damage, because a twenty years' user would confer a title, which might eventually prove very injurious to the owner of the land. The plaintiff, (if you believe his witness,) has proved a deed from Mr. Shilling in 1839, and an entry under it, which is sufficient evidence of a title to the land as against these defendants. The defendants have put in no evidence to show that they have the right to keep the dam at any height that is injurious to the plaintiff. But it was admitted in the opening, that they have a right to keep the water as high as it had been kept, at the same seasons of the year, for twenty years prior to the date of the writ, and this admission you may take to be correct. So that aside from the question of damages, (as to which the law has been given,) there are two important questions, one or both of which it will be necessary for you to consider.

1. Did the defendants, between the 7th of March, 1847, and the 19th of September, 1849, by means of their dam, cause back water upon the plaintiff's land, or cause the water falling upon, or running into the land, to remain, and keep the land wet, longer, or in a greater degree, than otherwise would have occurred?

2. If so, was this done to a greater extent than had been done, the same seasons of the year, for twenty years previous to the date of the writ, September 19, 1849?

The first question is, in substance, whether the dam affects the land during the time alleged in the writ, and the second, whether this was done to a greater degree than had been done in corresponding seasons of the year, for twenty years prior to the date of the writ. If you find the first in favor of the defendants, you have no occasion to consider the second; otherwise you will decide the second as well as the first.

The jury retired to deliberate upon their verdict about four o'clock in the afternoon. At one o'clock the next morn-

ing, the jury sent a communication to the presiding justice, as follows :

" The jury would wish to inquire of the court, if they should agree that the dam at Trickling Falls, (as it now is,) has affected the land of Dr. Bassett, but cannot find any damage to said land, if they can give a verdict accordingly.
GEO. O. HILTON, Foreman.

May 27, 1853.

If you should give an answer in the affirmative, you will confer a favor by giving us a form.
G. O. HILTON."

To this the presiding justice wrote the following answer upon one side of a paper, having upon it a portion of the charge, viz., the two questions before stated.

" Mr. Foreman—If the jury find the two questions upon the back of this, as explained in the charge, in the affirmative, and yet cannot find any damage to the land, then the Dr. is entitled to nominal damages, that is to say, one cent, or one dollar, or the like. Below you will find two forms for a verdict, to be used according to circumstances."

One form of verdict thus furnished was for the plaintiff, and the other for the defendants. At this time one of the associate justices came in with the officer, who brought the foreman's letter, and was present when the answer was written, and was told in general terms, that a part of the charge would be sent to the jury, and neither objected to sending the answer, nor intimated any wish to be more particularly informed of the contents.

The jury returned a verdict for the plaintiff for one cent damages. The defendants' counsel moved to set the same aside, because of the said rulings and instructions; and in case this motion should not prevail, asked that the plaintiff's costs may be limited.

There was no evidence that the defendants acted mali-

ciously or wantonly in the use and management of this dam, and the court below were of the opinion that the plaintiff had no reasonable expectation of recovering more than thirteen dollars and thirty-three cents damages. Whether the title to real estate was in question can be determined from the facts reported in the case.

The writ alleges the injury from the 10th of March, 1847, to the 17th of August, 1849, and not from the 7th of March, 1847, to the 19th of September, 1849, as erroneously assumed in the charge. But neither party called the attention of the court to the mistake, till after the verdict had been returned and the jury had been discharged, and the court believe that the defendants could not have been in any way prejudiced or injured by the mistake. Twice during the trial the court ruled as to the relevancy of evidence of the state of the water, and the condition of the land, at other times than those included in the writ; and in admitting the evidence, distinctly stated that no damages could be recovered except for the time named in the writ. There was no evidence that the water was higher from the 7th of March, 1847, to the 10th of March, 1847, or from the 17th of August to the 19th of September, 1849, than during other and corresponding or similar times embraced in the writ. The plaintiff's counsel in no way claimed damages for any time not within the writ, and the jury had the writ with them.

*Wells,* for the defendants.

We contend that we are entitled to an examination of the question, as to the allowance of the amendment of the declaration. The amendment was allowed, at each term, against the protestations of the defendants, and as the court had no minute to the contrary, the affirmative declaration of the defendants' counsel, that they did except, ought to prevail.

The law requires the assent of at least two judges to legalize an act in the court of common pleas, and although, it

is said, another than the presiding judge was present at the giving of the instructions in the night, yet the case shows that he knew nothing of what those instructions were, other than that a part of the charge would be sent to the jury.

These instructions must have influenced the jury in finding a verdict for the plaintiff for nominal damages. It is not competent for any judge of the court to interpose his opinion, as to the effect of any instruction given to the jury. The question for reëxamination is, were these instructions legal?

By the written instructions sent to the jury, the time of the alleged injury was extended thirty-five days in each year, and the fact that *any* such instructions were given to the jury in the night, was not known to the defendants or their counsel, until after the jury was discharged.

*Christie,* on the same side.

I. Was the amendment admissible? This depends on the question, if it introduced a new cause of action. None such could be admitted. What was the declaration before the amendment? The complaint was, that the water of the river was caused by the defendants' dam to overflow the plaintiff's land. The Powow river, however, could not flow this land. The allegations of the declaration could not be proved. All the engineers agreed that the summit of the defendants' dam was four feet below the surface of the plaintiff's land. The amendment says, the waters falling upon and flowing into the plaintiff's land, water from a different source from the Powow river. The declaration, as it stood, did not meet their case, and the amendment introduces a new cause of action, to be supported by different proof from that which would have been originally admissible. Such an amendment was not allowable, if objected to, and it is not denied that we did object strenuously at both times, when it was proposed. We have never waived this objection. It is not supposable that counsel could in-

tend to waive an objection, which if well founded, was fatal to the amendment, and equally fatal to the plaintiff's cause. The counsel for the plaintiff do not say they did not understand us to except to this amendment.

As to Shilling's testimony. The declaration referred to the plaintiff's title as derived from H. Thayer. The deed from Shilling to Bassett was said to be lost. We supposed the evidence relative to that deed to be addressed to the court. We objected to it as incompetent, when it appeared that the deed was recorded. We contended that an office copy was the proper evidence, and that verbal evidence was not to be received of the contents of such a deed, when it appears to be in the power of the party to produce an authenticated copy. It is said, we objected as well to the copy as to the parol evidence. We believed no proper evidence had been laid before the court to warrant the introduction of a copy, much less verbal proof. We contended, and now contend, that there are degrees of secondary proof, and that a copy of the record of a deed took precedence of memory, and must be produced.

We asked this witness if he had any other title to the premises than his deed from H. Thayer, and when that deed was delivered, and by whom. That title was set out in the declaration, and we desired to impeach it. We designed to show that the deed of H. Thayer was never delivered during her life. It was important for us to show that Shilling had no other title but from her, because if he had none but from her, he had none whatever, and nothing passed by his deed to Bassett. It is said, the evidence was immaterial. Bassett was in possession, and that was title enough for him, to enable him to maintain this action. The court held that possession alone was sufficient to maintain this action. That position we deny. There is a distinction between trespass and case for flowage. If possession is enough to maintain the action, it is not sufficient to enable the plaintiff to recover full damages. If the defendants can show

that the plaintiff does not own the land, though he may maintain the action, yet he cannot recover full damages. If the party is in possession by the license of the owner, he may, perhaps, recover the whole value, because he may be accountable over to the owner. But if such party is in possession as a trespasser, a recovery by him against another trespasser cannot be a defence for the latter, in an action upon the case brought by the true owner, for the injury done to his interest. In case, therefore, by a party in possession, he must show himself to be the true owner, to entitle himself to full damages. If, then, we had been permitted to deny the title of Shilling, and consequently of Bassett, we should have shown ourselves accountable to Thayer, and not to Bassett, for all the injury but that done to the naked possession of Bassett.

As to the charge, there is a distinction between different cases, where no actual damage has occurred. The law presumes some damage to the owner of land, where a valuable right may be taken away by the continued interference of others through a length of time, though no actual damage be shown. But where no such right is liable to be lost, the rule of law is different. Here the grievance complained of had continued for several years. If no injury had been done in that time, it is evident no injury could ever be done. Damages should not be allowed unless some injury appears. The reason on which nominal damages are allowed ceases to exist in such a case. If the plaintiff's land cannot be injured by the permanent continuance of the state of facts existing in this case, he cannot lose any valuable right, however long it may continue, and as he cannot sustain any damage, the ordinary rule as to nominal damages cannot be applicable.

The plaintiff is not entitled to recover full costs. The rule, that the costs are limited, where the title to real estate is not in question, and the party had no reasonable expectation to recover more than thirteen dollars thirty-three cents,

applies only to cases of trespass *quare clausum*; but the court would advert to the same principles, in cases where they have a discretionary power. It was admitted here, that the defendants had a right to flow as high as they had usually flowed from October to May. We claimed only the right to flow as high as we had usually flowed. The easement was admitted. The only question was, if it had been exceeded. It was not as to our right, but if we had kept within it. This did not relate to any title to real estate, nor to any easement in it, but merely if the water was kept above our right. The question as to the costs depends on section 6 of chapter 204 of the Revised Statutes; a reasonable provision, designed to discourage suits for trivial causes. No damages were shown here, and the court will hesitate to give encouragement to such suits, designed to extort damages for imaginary injuries. If any damages were sustained, they could have been shown, and if none could be shown at the trial, they never could be shown in future.

*French* and *Marston*, for the plaintiff.

1. The amendment was proper at either term. The record shows it to have been allowed at the September term, and no exception was taken, and, therefore, the ruling of the court of common pleas was conclusive. If the exception was not intended to be waived, it was waived because not insisted upon. Our meadow was wild, but no case countenances any distinction between a meadow and a mill privilege, where the question is if the defendant shall be allowed to acquire a right. The court will sustain the principle as applicable to both. We desired the amendment to cover our whole case. Our grievance was the holding back the water on our land, from whatever source it might be derived.

2. The secondary proof by parol, of the lost deed, was clearly sufficient, no exception being taken. Had exception been taken, it is not clear, perhaps, whether the plaintiff

would have been compelled to produce a copy or not. If parol proof was sufficient, the copy was merely cumulative, and immaterial; if *not*, the copy was the best evidence, and the parol proof immaterial. The subject is fully discussed in 1 Greenl. Ev. 84–85 and note; *McNeil* v. *McClintock*, 5 N. H. Rep. 357; *Colby* v. *Kenniston*, 4 N. H. Rep. 262; *Woods* v. *Gassett*, 11 N. H. Rep. 444; *Stickney* v. *Stickney*, 1 Foster's Rep. 70; *Forsaith* v. *Clark*, 1 Foster's Rep. 418.

3. The instructions of the court as to the general principles of law were correct, and no exception was taken. *Woodman* v. *Tufts*, 9 N. H. Rep. 88; Angell on Water Courses 341.

4. The practice of sending written instructions to the jury is proper and common, and in this case the presiding justice merely repeated, with the approbation of another justice, a part of his original charge.

5. The errors as to the time in the charge are immaterial, and having been made, as the case finds, in the original charge, in hearing of all the counsel, and not corrected, are conclusively presumed unimportant.

6. As to costs. Although the plaintiff had no reasonable expectation of recovering more than $13,33, the court are only to limit his costs to such sum as they think reasonable. Comp. Stat. 493, § 6.

The statute is not imperative, but contemplates cases where full costs may be properly allowed, even though there was no such reasonable expectation. The object of the statute is to prevent frivolous suits in the court of common pleas, which should be brought before a justice.

This was a case involving a valuable right, though the damages may not have been large, and from its importance would never have been terminated in a justice's court.

Again, the court of common pleas have, by statute, discretionary power to limit, and have not exercised it.

Thirdly, the court of common pleas err in their opinion that the plaintiff had no such reasonable expectation. The

nature of the case and of the evidence cannot authorize such an opinion.

Fourthly, the title to real estate was in question. The case finds that the defendant desired a ruling, whether it would be competent to prove a title in a third person, as an answer to the action. The defendant also objected to the sufficiency of the plaintiff's evidence of title. The claim of a right to flow necessarily involves the title. The case finds that as to the period of time from the 20th of October to the 12th of May, the fact of injury and the right to injure were both in controversy.

BELL, J. The amendment was objected to because, as it was alleged, it introduced a new cause of action. The substantial grievance alleged in the writ, was the maintaining a dam across the river, to the injury of his meadow above. If the dam, as it was kept up, caused injury to the plaintiff's land, by keeping the water upon it, it was immaterial whether it was the water of the Powow river, or of the little streams flowing into it, or that falling upon it in rains. The substantial injury, then, being the damage to the land by means of water kept up by the defendant's dam, the amendment was but a different mode of stating the plaintiff's grievance. And it seems to us that it falls within the ordinary test of the identity of a cause of action, that it would require precisely the same evidence to support the action after the amendment, that it would have done before. It would hardly be contended that, in the original form of the declaration, very exact evidence would be required to trace the water on the meadow to the river, nor would it be a very strained construction to regard all the waters that must naturally find their outlet through the Powow river, as waters of that river, so that " the waters falling upon and flowing into said land of the plaintiff," would be identical with the waters of the Powow river, into which they flow. It is no test of the propriety of an amendment,

that the plaintiff's proof will not sustain his declaration as originally drawn, but will support it as amended.    The object of an amendment always is to obviate some variance between the proofs and the allegations, which, if uncorrected, would defeat the action.

The ruling of the court as to the exception claimed to have been taken to the admission of the amendment, was correct.    It is not, of course, that a party is entitled to the transfer of such an exception as this to the superior court. The allowance of amendments is a matter of discretion, in which the decision of the court below is ordinarily final. This amendment was admitted at the September term, 1852.    It should, then, have been insisted upon, and an order of transfer obtained.    This was not done, and the exception was, consequently, waived by the neglect.    It was quite too late to insist upon this objection at the succeeding term.

If the objection to the parol evidence of Shilling's deed, seasonably taken, would be well founded, yet the party interested is not bound to object to evidence because it is technically open to objection.    He may be silent, if he pleases.    He may see no advantage to be gained by objecting to evidence, though it be inferior to what he has a right to require.    But his election is to be made at once.    Objections to evidence must be made when it is first introduced, and its bearing is seen.    If the party, then, fails to take exception, he is taken to have waived any objection, and is precluded to insist upon it afterwards.    There is no rule of practice in courts which rests on a sounder foundation, or is more universally adopted than this.    If exception is seasonably taken, it gives to the adverse party the opportunity to obviate it, which it may not be in his power to do afterwards.

It is suggested that the defendant's counsel supposed the evidence of this witness to have been addressed to the court. But we find it difficult to admit this supposition.    Evidence

to show the loss of a paper, or proper diligence in searching for it, and evidence of the character of the secondary evidence proposed to be offered, is properly addressed to the court; but when such evidence has been laid before the court to render the secondary evidence inadmissible, as was done here by the affidavits stated in the case, it is matter of familiar knowledge that the evidence of the contents of the lost paper is addressed to the jury.

The objection to the office copy of the same deed seems not well founded. Such a copy is usually the most unexceptionable evidence, since it is a copy of a record made by a disinterested public officer, in the discharge of his official duty. It is not rendered objectionable by the fact that the plaintiff had previously attempted to prove the contents by parol. If that was done without objection, he was not bound to rest satisfied with that mode of proof. His witness' memory may be at fault, or his credit may be impeached, and the defendant, by omitting to object to evidence of an unsatisfactory kind, can gain no right to object to that of a more reliable character.

In some cases, the questions proposed to the witness Shilling, upon his cross-examination, might appear irrelevant. The evidence on which the plaintiff relied to sustain his title, was the entry of Shilling, claiming under the deed of H. Thayer. For some purposes, that entry, under a claim of right, is clearly sufficient *prima facie* evidence of title, whether Shilling had or had not a valid title.

Possession is a good title against a wrong doer, a party without title. This has been so held in real actions. *Lund* v. *Parker*, 3 N. H. Rep. 49; *Straw* v. *Jones*, 9 N. H. Rep. 400; *Bailey* v. *Carleton*, 12 N. H. Rep. 15; and in trespass and trover; *Wendell* v. *Blanchard*, 2 N. H. Rep. 456; *Jones* v. *Sinclair*, 2 N. H. Rep. 319; *Pinkham* v. *Gear*, 3 N. H. Rep. 484; *Barron* v. *Cobleigh*, 11 N. H. Rep. 557; *Pickering* v. *Coleman*, 12 N. H. Rep. 148; *Moor* v. *Campbell*, 15 N. H. Rep. 208.

The defendants here are not shown to have set up any claim of title to the soil of the land in question; and for the purpose of defeating his right to recover for any injury done to him, they stood in no position to question his title. If he had acquired a possession of the premises by wrong, that was a matter to be inquired into by those whose interests he had trespassed upon. Those who were themselves but wrongdoers or trespassers, or, at most, entitled to some ease-ment or privilege upon the land, could not be allowed to defeat his action by denying the validity of his right to the property.

But though the title of one in possession cannot be dis-puted for the purpose of defeating the action he has brought for an injury done to him, yet for the purpose of ascertain-ing the amount of the injury he has sustained, or whether the acts complained of constitute in fact any injury to him, it is always competent to inquire what is the nature and ex-tent and character of his interest. Thus in real actions it has been held that it may be shown that the possession was merely a trespass upon the rights of the plaintiff; *Atherton* v. *Jones,* 2 N. H. Rep. 35; *Murray* v. *Webster,* 5 N. H. Rep. 391; or that it was held under a license, or tenancy at will, or for a term which has expired; *Sperry* v. *Sperry,* 8 N. H. Rep. 477; *Straw* v. *Jones,* 9 N. H. Rep. 400; *New Parish* v. *Odiorne,* 1 N. H. Rep. 232; *Robertson* v. *George,* 7 N. H. Rep. 306; or upon a condition which has not been performed; *Sperry* v. *Sperry,* before cited; or that it has been abandoned; *Blaisdell* v. *Martin,* 9 N. H. Rep. 253.

So in personal actions, it may be shown that the posses-sion under which the claim is made, was that of a mere ser-vant; *Robertson* v. *George,* 7 N. H. Rep. 306; or that the possessor was a mere depositary, and that the general owner has brought an action for the same injury; Story on Bail-ments § 93; *Poole* v. *Simonds,* 1 N. H. Rep. 289; *Odiorne v. Colby,* 2 N. H. Rep. 70; *Drake* v. *Redington,* 9 N. H. Rep. 243. In such cases, the party trespassing is not necessarily

liable for the value of the property, but it may be shown, particularly in the case of receiptors for property attached, that the receiptor is liable over only for a limited amount.

So in the case of pawner and pawnee, each may maintain an action, and the pawnee, by virtue of his possession, can recover only to the amount of his debt, if the taking is done or authorized by the pawner. Story on Bail. § 352.

So the defendant may prove, in mitigation of damages, that the goods did not belong to the plaintiff, and that they have gone to the use of the owner. *Squires* v. *Hallenbeck*, 9 Pick. 551; *Spoor* v. *Holland*, 8 Wend. 445; *Baker* v. *Freeman*, 9 Wend. 36.

The principle in all the cases is, that the party in possession is entitled to recover only a just compensation for the injury he has sustained. *Prima facie* he is entitled to such compensation for the whole damages done to the property, but it may be shown what his interest in the property really is, to reduce the damages he may recover to the actual injury he has sustained.

The nature of the present case is such as to present this question. The amount of the damages seems to have been regarded as extremely small, so much so that the jury found it necessary to make the inquiry of the presiding justice what was their duty to do as to the matter of damages, if they found the land of the plaintiff affected by the flowage, but they could not find any damage to the land. It is settled that a party may recover some damages whenever another, under a claim of right, assumes to interfere in any way with his property, in a case where the continued exercise of such assumed right, may by time ripen into an easement and incumbrance on the property, though no actual damage be shown, because the party has no other remedy to protect himself against such encroachments but by a suit for damages. The instruction of the court, therefore, to the jury, as the case stood before them upon the evidence, was correct and proper, because the title of the plaintiff appeared

to be in fee simple, and of course of such a permanent char-
acter that he had danger to apprehend to his interests from
the establishment of an injurious easement. But if the
plaintiff's only interest had been shown to have been that
of a wrongdoer or disseizor in possession, it is very appar-
ent that his interests could not be affected by the possibility
of an accruing easement, and under such circumstances the
instruction to the jury should have been different. And
where it appeared that the whole amount of damages to
the property was estimated by the jury at a nominal sum, it
may be supposed that if they had been instructed to inquire
whether there was any damage done to the interest of the
plaintiff, and if they found none, to find their verdict for the
defendant, the result of the trial might have been essentially
different. The case does not show what was the character
of the investigation, designed to follow the interrogatories,
which were held inadmissible ; but it may naturally be sup-
posed that they were designed to show, as was suggested in
the argument, that the plaintiff's title was defective and his
interest defeasible. As the evidence seems to us to have
had a material bearing, if successfully followed up, and the
defendant was entitled to go into the inquiry, it was errone-
ously rejected, and for this cause there must be a new trial.

In the argument for the defendants, no exception is taken
to the legal principles stated in the charge originally given
to the jury. It seems to us not justly open to any, except
that just discussed.

There was a mistake in the dates given to the jury, but
upon the facts presented in the case, we think it impossible
to contend that any prejudice could have resulted to the de-
fendants from those errors. The verdict shows that the jury
regarded the action as maintainable, not on the ground of any
appreciable damage sustained by the plaintiff, but solely on
the ground that the maintenance of this dam was an infringe-
ment of the plaintiff's right, for which he was entitled to
some damages, merely to vindicate those rights and protect

his property from the easements which time and a repetition of the wrong might otherwise fasten upon his estate. A few days more or less could not have affected the result, and a verdict will not be disturbed on account of any error in the rulings or the charge, which could not have affected the result. *Wakefield* v. *Alton*, 3 N. H. Rep. 378; *Wiggin* v. *Damrell*, 4 N. H. Rep. 69; *Jewett* v. *Stevens*, 6 N. H. Rep. 80; *Hamblett* v. *Hamblett*, 6 N. H. Rep. 333; *Stevens* v. *Lyford*, 7 N. H. Rep. 360; *Knowles* v. *Dow*, 2 Foster's Rep. 387.

The exception which seems most relied upon, is that founded on the note sent by the jury to the presiding justice, asking information as to the instruction designed to be given in a certain contingency, and the answer given to the inquiry by the note of the justice. It is objected that to every act of the court the assent of two at least of the judges is required by law, and that although one of the associate justices happened accidentally to be present, yet he was not advised with nor his assent asked, and he took no part in the matter; that it is not competent for any judge, more especially in the absence of the counsel, to interpose his opinion as to the effect of any instructions previously given to the jury; and that the note sent to the jury must have influenced them to find their verdict for nominal damages.

It ought to be assumed, as is contended, in considering this question, that the jury were influenced by the communication of the judge in arriving at their verdict. They were in doubt upon the legal principle the court intended to state for their guidance; the inquiry was made and answered for the purpose of assisting them in their deliberations. No exception was taken to the character of the instructions or to their propriety, upon the evidence then before the jury, if any instructions could properly be given to the jury during an adjournment. In *Sargent* v. *Roberts*, 1 Pick. 337, it was held that " no communication whatever · ought to take place between the judge and the jury after ·

the case has been committed to them by the charge of the judge, unless in open court, and, when practicable, in the presence of the counsel in the cause." But we do not understand that this is the rule recognized in this State, and we can hardly regard it as sound doctrine, in its full extent, any where, since cases may be readily supposed where a power to communicate with the jury is indispensable. The power of the court, in cases of this kind, was examined in *Shapley* v. *White*, 6 N. H. Rep. 172, and though the case of *Sargent* v. *Roberts* was before the court, the practice of giving instructions upon matters of law, after the charge and during an adjournment, was vindicated, both as to the power and the propriety of its exercise. The case of *Shapley* v. *White* speaks of the court, and not of a judge. It does not seem to us that there can be any reasonable distinction based on this circumstance. The charge to the jury is, in our practice, made by the judge who presided at the trial, and if any explanation or repetition of it is required, it must naturally be made by him. The concurrence of his associates may well be presumed, if they are attending the court, as it is, if not objected to, to the charge itself. The power of holding communication with the jury, in such cases, is one which, we think, should not be ordinarily nor often resorted to, but of its propriety, in special cases, we entertain no doubts.

*Verdict set aside.*