NEW-YORK,
May, 1832.

Baker
v.
Freeman.

---

BAKER and others *vs.* FREEMAN.

The trustees of a *common school district* are liable in *trespass* for making an assessment, and issuing a warrant for the collection of a tax voted at a district meeting to raise money to purchase a site for a school house, and building a new school house on a *site* different from that on which the old school house stood, where the previous consent of the commissioners of common schools has not been obtained to a change of the site of the school house.
Where the property of a party is sold under illegal process, and the sum demanded is raised by a bid at the sale of the property, made by an agent of such party, who purchases for the benefit of his principal and pays for the same with the money of the principal, *the measure of damages* in an action of trespass in such case is the *amount of the bid and the interest thereof,* and not the value of the property sold.

ERROR from the Niagara common pleas.  Freeman sued Baker and two others, trustees of a common school dis-

trict, in an action of *trespass* for causing the sale of a quantity of wheat growing upon his land. The defendants justified under a warrant issued by them to collect a tax voted by the inhabitants of the district to purchase a site for a school house, and to erect a school house thereon. The district was composed of parts of the counties of Niagara and Orleans. There was a school house in the district, but being old ond unfit for use, it was resolved at a district meeting in October, 1828, not to repair it. On the 6th December following, at a district meeting it was resolved that the trustees be instructed to call on the school commissioners and request them to locate a site for a school house on a certain spot, particularly designating it. On the 20th December, the commissioners of common schools for the town of Royalton, in the county of Niagara, gave their written consent to the removal of the school house site to the public square, near the meeting house in the village of Middleport, but the *assent of the commissioners* of common schools of the town of Shelby, in the county of Orleans, into which latter town the school district extended, *was not obtained*. A resolution was passed at a district meeting that $32 be raised by tax *for purchasing the school house site*, and at an adjourned meeting held on the 7th February, 1829, $368 was voted to be raised by tax for the purpose of building a school house. In pursuance of these resolutions, a tax list was made out and a warrant issued for the collection of the same. The amount directed to be levied of Freeman was $50,30. A portion of which, viz. $17,05, remaining unpaid, the collector, in July, 1829, sold $5\frac{2}{3}$ acres of wheat growing on the land of Freeman to satisfy such balance. The wheat was sold to Philip Freeman, a *son* of the plaintiff, for the precise balance of the tax remaining due. The $5\frac{2}{3}$ acres yielded about 30 bushels to the acre, worth $\frac{75}{100}$ per bushel, the expense of harvesting and preparing the wheat for market being about one fourth its value. The wheat was harvested by the plaintiff, and his son Philip never exercised any acts of ownership over it. The defendants offered to prove by Philip Freeman that in the purchase of the wheat, he acted as the agent of the plaintiff, that he bid it in for the plaintiff, and paid for it with the money of the plaintiff; which evidence

NEW-YORK,
May, 1832.

Baker
v.
Freemrn.

was objected to by the plaintiff and rejected by the court, who charged the jury that the district had no power to raise a tax to build a school house on a site different from that on which the old school house was situated, until they had obtained the consent of the commissioners of schools, as well of the town of *Shelby* as of the town of *Royalton*, to change the site ; and that as the vote to change the site was passed previous to obtaining such assent, the whole proceeding was void, and the defendants were not protected by the resolutions passed at the district meeting. The defendants excepted to the· charge, and the jury found a verdict for the plaintiff, with $93,41 damages. The defendants sued out a writ of error.

*B. F. Butler*, for the plaintiffs in error. The persons competent to vote at a school district meeting have power to designate a site for a school house, and to vote such tax as they shall deem sufficient to purchase a site, and to build, hire or purchase a school house. 1 *R. S.* 478, § 61. The tax in question was voted at a legal meeting, in *February*, 1829. At a meeting in *December* previous, it had been resolved to apply to the school commissioners to designate a site for a new school house, and the assent of one set of commissioners had been obtained ; but the resolution of *February* did not refer to that of *Deeember*, and had no necessary connection with it. The school house in the district had become old and unfit for use, and it was competent to the meeting to vote a tax to rebuild it. The resolution did not, on its face, purport to raise money to build a school house on a different site from where the old school house stood. The assent of one set of commissioners to alter the site was obtained, and it not being shewn that the others did not assent, their assent will be intended. Allowing a change of site was contemplated, and that the assent of the commissioners was necessary, still, the necessity for re-building the school house existing, it was competent to the meeting to vote the tax, the money to be applied according to circumstances to the building of a school house on the *old* or *new* site. The assent of the commissioners to the change of site might as well be obtained afterwards as before. Their assent to the raising of a tax is required only where the tax

exceeds $400 ; but if such previous assent was necessary, it will be intended to have been given, until the contrary be shewn. *Stark. Ev. pt.* 4, 1250. But if the resolution to raise the tax was illegal, the trustees in levying it acted *ministe-* *rially,* and are not responsible for its validity. The remedy of the party aggrieved was by appeal to the commissioners. It was the duty of the trustees to make out a rate bill or tax list, and to issue a warrant for the collection of the money ; they have no discretion or power of review. If they err in making out the assessment according to the directions given in the statute, they are liable, but not otherwise. They cannot be responsible for the errors of the district meeting. The vote of the meeting was within the scope of its ordinary powers ; it was not a resolution which under no circumstances they had a right to pass, and the trustees are protected within the principles adopted in *Savacool* v. *Boughton,* 5 *Wendell,* 170. See also 1 *Caines,* 91, 8 *Johns: R.* 69, 9 *id.* 229, 13 *id.* 444. Besides, the plaintiff here had his remedy by appeal to the commissioners, and should have resorted to it. 1 *R. S.* 487, § 110. 2 *Wendell,* 287. 1 *Caines,* 91.

The common pleas erred in excluding evidence that the property in question was brought in by an agent of the plaintiff himself, with his money and for his benefit. In trespass *de bonis,* &c. the measure of damages generally is the *value of the property,* but the application of that rule to this case is manifestly unjust and inequitable. The object of the law is to give an indemnity, and the plaintiff here is indemnified by giving him the sum which he was obliged to pay to retain his property.

*J. C. Spencer,* for defendant in error. It is manifest that the tax was imposed to build a school house upon a new site. There being a school house for the district, its site could not be changed without the consent, in writing, of the commissioners of common schools of the town within which the district was situate. 1 *R. S.* 479, § 66. The tax could not legally be imposed, nor the money collected, in anticipation of the assent to be subsequently obtained. The trustees are not protected within the principles of the case of *Savacool* v.

*Boughton*, in which the ministerial officer is held not liable for the execution of process, although the court or officer from whom it proceeds has not in fact jurisdiction, provided that *on the face of the process* it appears that the court *has* jurisdiction of the subject matter, and there is nothing to apprise the officer to the contrary ; for in that very case it is admitted, that if the fact of the want of jurisdiction is to be presumed to be within the knowledge of the officer, he is bound on such knowledge in opposition to the statements in the warrant, to refrain from acting. Here the trustees must be presumed cognizant of the acts of the district meeting, and to have been acquainted with the objects of the meeting in voting the tax ; and knowing that the assent of the commissioner to a change of site had not been obtained, they might and ought to have refused to act. Having the right to refuse to act, they are not protected. The counsel cited 6 *T. R.* 443 ; *Cowp.* 640 ; 16 *East,* 21 ; 10 *Mass. R.* 356, 105 ; 13 *id.* 282. In regard to the rejection of the evidence offered, the counsel observed that if the son of the plaintiff did not think proper to claim the benefit of his purchase of the wheat, and on the contrary made a present of it to his father, the defendants could claim no exemption from liability on that account, but were responsible to the full value of the property sold.

*Butler,* in reply, remarked that the case in 13 *Mass. R.* 282, cited on the other side, was distinguishable from the case at bar, as there the resolution under which the defendants acted was not within the scope of the ordinary powers of the meeting who adopted it.

*By the Court,* NELSON, J. The court below erred in excluding the evidence of P. Freeman, that he bid off the wheat as the agent of his father, and the jury also erred in finding a verdict to the amount of the value of the wheat. The court gave no directions on this point to the jury, but their exclusion of the above testimony sufficiently indicated their opinion, as that decision must have been made upon the ground that the plaintiff was entitled to the *value of the property sold.* The evidence abundantly shews that it was bid off for the

NEW-YORK,
May, 1832.

Baker
v.
Freeman.

benefit of the plaintiff; and in such a case, a party is entitled only to the amount of the bid and the interest of the same, which is the true measure of damages.

Though the material facts in the case are not very clear, I consider the following as proved: that the district was composed of a part of the town of Royalton, Niagara county, and of a part of the town of Shelby, Orleans county; that the district owned a school house and the *site* upon which it stood. In such a state of things, the inhabitants had no authority to change the *site* without the consent of the commissioners of common schools of each town within which the district was situated, 1 *R. L.* 479, § 66; and, as a necessary consequence, I consider the tax voted on the 20th December, 1828, of $30, to purchase a site, unauthorized and void. The tax voted on the 7th February, 1829, of $368, to build a school house in the district, as declared on its face, was no doubt within the express authority of the district meeting, 1 *R. S.* 478, § 61; and they had, on the 13th October before, voted that they would not repair the old school house, which appears to have been decayed and unfit for use. But it is plain that this tax was voted for the purpose of building a school house, not upon the old site, but upon the one directed to be purchased, which might have affected, and no doubt did essentially affect that vote. If the district had been aware that they had no power to pass the resolution changing the site, or to build a school house thereon, they probably would not have raised any money for that purpose; or if they had voted to raise money to build a school house, knowing it must be built upon the old site, it might and probably would have affected the amount raised, as the new site was on the public square in a village. We must look beyond the resolution to ascertain whether the inhabitants of the district had the power to pass the resolution to raise the money at the time of the vote; whether they were acting within the power conferred upon them by the statute, and in doing so, we see to be sure they had power to raise money to build a school house, but not to raise money to build on the new site. They might as well have voted to raise money to build one in the next district, or

NEW- YORK,
May, 1832.

Baker
v.
Freeman.

out of the county, as on the new site. The object and use of the money raised must be taken into the account in determining the authority to raise it, and should come within the provisions and intentions of the act. I am inclined therefore to the opinion that the resolution of the 7th February, 1829, was also unauthorized. If either resolution was void, it vitiates the assessment, as both sums voted were included therein.

But admitting the resolutions to raise the money unauthorized, are the trustees liable in an action of *trespass* for the assessment, and warrant to the collector? The statute, 1 *R. S.* 481, § 75, defines their powers and duties, among others, to call special meetings of the inhabitants of the district, when they shall deem proper; to give notice of special, annual and adjourned meetings, if the clerk is absent, or incapable to make out a tax list voted by any meeting, &c.; to annex to such list a warrant directed to the collector, to purchase or lease a site for the district school house as designated by a meeting of the district; to build the same, to employ teachers and pay them; in a word, these officers have almost the entire control and direction of the various interests and concerns of the district, as will appear from an examination of the common school act, and I cannot but view them in the light of parties to most of the proceedings of their district, rather than as ministerial officers, bound to obey the mandate of a superior. They can put the district in motion as well as be put in motion by it, having the power to call special meetings when they think necesssary and proper. In this very case it was probably an omission of their duty that renders the votes of the district nugatory. They were required by the resolution of the 6th Dec. to call on the school commissioners and request them to locate the site designated therein; and on 20th December the written consent of those of Royalton was obtained, and an application to those of Shelby, no doubt, would have been equally successful, which would have authorized the proceedings of the district under which the trustees have acted in making the tax list and issuing the warrant. Their powers and duties being so extensive and exclusive in the management of all the affairs of the district, a correspondent vigilance and attention to the rights of the district should be required from them; and I per-

ceive no greater hardship in holding them responsible for the execution of an illegal resolution or vote proceeding from a district meeting, than in holding a party liable for the execution of process issued by a court without authority. They are not bound to carry into effect such illegal resolutions. The resolutions of such meetings are often passed by the procurement of the trustees, and the trustees are generally looked to as the advisers of all measures in which the interest of the district is concerned; they can at any time call a special meeting of the inhabitants to revise and correct any erroneous or illegal step. For these reasons I am of opinion that trespass lies against them, in a case like the present. Even if viewed in the character of ministerial officers, I think they would be liable, on the ground that the resolution of the 20th December showed on its face that it was passed without authority. It raised money " to purchase a site for a school house, when the district already had one; and which of course must have been known to the trustees; and as before remarked, if the trustees acted without authority in respect to one of the votes or resolutions, the whole proceeding is vitiated and void. For the error of the court, however, in rejecting the proof offered, which led to the erroneous assessment of damages, the judgment must be reversed.

Judgment reversed, with single costs; venire de novo from Niagara common pleas.