By the Court,

Bronson, J.
It is agreed that the first district meeting was irregular, and the commissioners for that cause renewed the notice for a meeting in October (1 R. S. 477, §57). The proceedings of the first meet ing were utterly nugatory; and we can no more regard them as valid in *248 relation to the site for a school house, than we can in relation to the choice of trustees or the voting of a tax.
The inhabitants when duly assembled in a district meeting, have power among other things to designate a site for the district school house. § 61. The trustees have power to purchase or lease a site for the school house, as designated by a meeting of the district, and to build the house. § 75. The inhabitants could not delegate their power to the trustees (Robinson [439] v. Dodge, 18 Johns. R. 351). In this case the resolution to levy a tax, stands directly connected with that authorizing the trustees to fix the site of the house. The inhabitants first resolved that “ the site of the school house shall be established where the trustees of said district shall think proper; and then, that the trustees procure a title to the land on which said school house should be located,” and that a tax of $300 be levied “ for the building of said school house and procuring a title to the land.” The case falls within the principle of Baker v. Freeman (9 Wendell, 36). It may be conceded that a tax for building a school house can be levied and collected before the inhabitants have designated a site for the building; but here the tax was voted for an illegal purpose; to build a school house “ where the trustees of said district shall think proper; ” and there was, I think, no authority to issue the warrant.
But there is another and a fatal objection to this proceeding. Without noticing the questionable power to renew the warrant more than once, § 89, the whole amount of the plaintiff’s tax was levied and collected by a sale of his property, and the power of the trustees was then clearly at an end. They went afterwards to the collector and altered the tax list, so as to require the collection of a different sum from the plaintiff, and on that altered process the property in question was taken. For what purpose this alteration was made, has not been explained. It seems probable, however, that the trustees, after they had been sued and judgment had been recovered against them for the first levy, thought themselves authorized to.collect the whole or some portion of the tax over again. In this they were mistaken. If the judgment against them was erroneous, their remedy was by appeal to the common pleas. They had no right to reverse the judgment themselves, as they virtually did, by ordering a part of the tax to be levied a second time. Such a doctrine can never be tolerated. This warrant has been kept on foot by various renewals, from October, 1833, to January, 1835; and I know not but it may yet be alive, if the trustees have power to continue its vitality. Should we sanction the principle on which they acted in altering the tax list, they may, as often as they are adjudged trespassers for collecting [440] the tax, order the whole or some portion of it collected again; and there would never be an end of the strife. If, under any possible circumstances, the trustees would be authorized to collect the tax a second time, the burden rests on them of showing the right. The common pleas decided correctly.
Judgment affirmed.