Finch v. Cleveland.

———— • • • ————

Same Term. *Before the same Justices.*

Finch *vs.* Cleveland and others.

In an action against three defendants, in which the acquittal of one does not necessarily lead to a discharge of the others, as for example in trespass, trover, &c. one defendant might be examined as a witness for his co-defendants, under section 397 of the code of 1849.

Where the rate-bill made out by the trustees of a school district is *erroneous*, by assuming to collect for teacher's wages, for a longer time than the teacher taught, the warrant is not void, and affords a protection to the trustees and the collector.

*It seems* that for such error in the rate-bill any person aggrieved may appeal to the state superintendent, whose decision is final.

The distinction between *erroneous* and *void* process pointed out.

A town superintendent of common schools has no right, by the 37th section of the act of 1847, amending the revised statutes relative to "public instruction" (*Laws of* 1847, *p.* 690,) to annul a certificate given by his pre-

decessor, to a person engaged in teaching a school, until at least ten days' previous notice in writing shall have been given to the teacher holding the certificate, and to the trustees of the district in which he is employed.

*It seems* the teacher and trustees have a right to be heard before the superintendent previous to the certificate being annulled.

The trustees of a school district have no power to dismiss a teacher holding the proper certificate, without cause, and against his consent, before the expiration of the contract.

When a teacher has been irregularly dismissed, his subsequent continuance in the school, with the assent of a majority of the trustees, is a waiver of such dismissal, and a satisfaction of the original employment.

This action was commenced before a justice in St. Lawrence county, in May, 1849, and was tried on the 28th of that month. The plaintiff complained against the defendants for the taking and converting one grain cradle and scythe, about the 11th of May, 1849, at Stockholm, St. Lawrence county, the property of the plaintiff, to his damage ten dollars.

The defendants severed in their pleading. Humphrey and Webster denied the taking, and if taken, they justified as trustees of school district No. 2, in Stockholm, alledging that the property was taken by virtue of a warrant to collect a rate-bill for teacher's wages, made and issued by them as such trustees of said district to the defendant Cleveland, the collector of said district. The defendant Cleveland admitted the taking, but justified as collector of school district No. 2 in Stockholm, under the warrant for teacher's wages, issued by the other defendants as trustees, &c. The warrant and rate-bill were produced, by which it appeared that the plaintiff was assessed 37 cents for teacher's wages in district No. 2 in Stockholm, for the term ending on the 23rd February, 1849. The warrant to which the rate-bill was annexed was in the usual form, signed by the defendants Webster and Humphrey, as trustees, addressed to the collector, and was dated April 16, 1849. The rate-bill was in proper form, containing the names of the several persons assessed, the whole number of days which each sent to the school, and the amount which was to be collected from each, and the caption showed the term for which the school was kept. On the back of the warrant was indorsed the return of the officer,

admitting that he had taken and sold the property in question by virtue thereof.

It was proved that a teacher was employed, and commenced the school about the 13th November, 1848, for three months, and four if required. The teacher was examined by the town superintendent and received the requisite certificate. A witness testified that on the 3rd of February, the trustees dismissed the teacher. The only ground stated for dismissing him was that his certificate was annulled by the town superintendent. The successor of the superintendent who gave the teacher the certificate when he was first employed, examined him over again the last of January, and decided him incompetent to teach, on account of his education being in some respects insufficient. The superintendent gave notice to the trustees on the 2d of February, to give to the teacher, that he intended to annul his certificate, and on the 7th of February gave a second notice to the town clerk, dated February 2d, to take effect February 12th. About the 7th of February the superintendent left the state and was gone about three weeks. The 3d of February when the teacher was said to be dismissed, was Saturday. One of the trustees did not acquiesce in the dismissal, and told the teacher to continue the school, which he did after a lapse of a day or two, during which the building was fastened up; and the school was kept open until the 23d February. A portion of the district continued to send their children until the 23d February. Others ceased to send after the 3d February, among whom the plaintiff was one. The rate-bill and warrant were made out about the 12th March, and notices were put up as required by law, 30 days, when the bill and warrant were given to the collector. The warrant was dated on the 16th April, when it was delivered to the collector. The evidence was conflicting on the question whether the warrant was signed at the time it was made out on the 12th March, or not until it was delivered to the collector. Webster and Humphrey were each admitted by the justice as a witness for his co-defendant, or for each other, against the plaintiff's objection. The teacher returned to the trustees a correct list of the number

Finch *v.* Cleveland.

of days each scholar attended school, duly sworn to. The trustees included in the rate-bill the wages of the teacher up to the 23d February. Twenty-five dollars public money was appropriated, and the balance, $17,26, was made up on the rate-bill, the wages being $42,26. The justice gave judgment for the defendants, which the county court of St. Lawrence county reversed. The defendants appealed to this court. Other facts will be noticed in the opinion.

*W. H. Wallace,* for the respondents.

*Pride & Chipman,* for the appellants.

*By the Court,* WILLARD, P. J. The justice committed no error in allowing Webster and Humphrey to be each examined in behalf of the other. The action was one in which the acquittal of one defendant did not necessarily lead to the discharge of the other. Under the former classification of actions, it was trespass or trover. It presented a case therefore, in which the code contemplates the examination of a defendant for his co-defendant. (*Code,* § 397.) The examination of one of these defendants was not used in behalf of himself, as it necessarily must have been in a case of a joint contract. It is true, the testimony of each formed an important part of the defense for his companion. But probably the same facts might have been proved by other testimony, had the defendants not been permitted to be sworn for each other.

The principal error complained of by the respondents, the plaintiffs before the justice, was that the warrant and rate-bill were illegal, because the teacher was discharged on the 3d of February and not legally employed again, and because the rate-bill included the teacher's wages up to the 23d February, the day when the school was finally closed, being for twenty days too much. Taking the facts to be as assumed by the objection, it does not follow that the action was sustainable even against the trustees. It appears by the return that all three of the trustees had notice of the time and place of meeting to

make out the rate-bill, and met together for that purpose, but one of them declined acting. The revised statutes (*vol.* 2, *p.* 555, § 27) expressly empower the majority, under such circumstances, to do the act which the three had assembled to perform. By the 82d section of the amended school act, (*Laws of* 1847, *pp.* 699, 670,) the trustees are empowered and required among other things, "to contract with and employ all teachers in the district; to pay the wages of such teachers, when qualified, out of the moneys which shall come into their hands from the town superintendents, so far as such moneys shall be sufficient for that purpose; and to collect the residue of such wages, excepting such sums as may have been collected by the teachers from all persons liable therefor; to ascertain by examination of the school lists kept by such teachers, the number of days for which each person not so exempted shall be liable to pay for instruction, and the amount payable by each person; and to make out a rate-bill containing the name of each person so liable, and the amount for which he is liable; and to annex thereto a warrant for the collection thereof." The trustees thus had jurisdiction of the subject matter, and were required to act. The plaintiff, an inhabitant of the district, and who had availed himself of the benefits of the school by sending scholars thereto, was subject to their authority. Admitting then, that the trustees erred in paying the teacher for twenty days too long, it made the rate-bill erroneous to that extent, but did not render it void. By the 132d section of the same act, (*Laws of* 1847, *p.* 710,) the plaintiff, or any other person conceiving himself aggrieved by this act of the trustees, might appeal from their decision to the state superintendent, whose decision is made final and conclusive.

There was no excess of jurisdiction in this case. The trustees apportioned the tax according to the number of days each person sent to the school, as ascertained from an examination of the school list kept by the teacher. They adopted the mode of computation prescribed by the statute. If that was erroneous, as the objection assumes that it was, the remedy is not by an action of trespass against the trustees and collector. In *Easton* v. *Calendar*, (11 *Wend.* 90,) the trustees erroneously added the

Finch v. Cleveland.

per centage allowed the collector to the tax, thus issuing the warrant for five per cent more than the tax voted by the district, and omitted, by mistake, the names of some inhabitants of the district; yet it was held, that though the rate bill was erroneous, and might have been corrected on appeal to the state superintendent, or by a common law certiorari, it was not void, and the trustees were not trespassers. The distinction between acts which are erroneous, and may be corrected by appeal, and those which are actually void, was properly marked in *Butler* v. *Porter*, (17 *John.* 145.) In that case, the justice gave judgment for more costs than he was entitled to by law; and it was held that he was not liable in trespass, though his judgment was erroneous, and might have been reversed. The cases on this point are collected and reviewed, in Cowen and Hill's Notes, 978, 980, 994. (*And see Henderson* v. *Brown*, 1 *Caines*, 92. *Hard* v. *Shipman*, 6 *Barb. Sup. C. Rep.* 621, *the opinion of Justice Paige.*)

The cases cited on the other side, are not analogous to this. In *Alexander* v. *Hoyt*, (7 *Wend.* 89,) the school district trustees did not base their tax list upon the last assessment roll of the town, as they were required by law to do. In *Baker* v. *Freeman*, (9 *Wend.* 36,) the trustees of a school district issued their tax warrant to collect a tax, voted to purchase a site for a school house, and building a new school house on a site different from that on which the old school house stood, without *the previous consent of the commissioner of common schools*, to a change of the site of the school house. By the law as it then stood, (1 *R. S.* 479, § 66,) the site of a school house could not be altered without the consent, in writing, of the commissioner of common schools of the town, within which the district was situate. Here was a want of jurisdiction in the district to vote the tax. The same principle was held in *Benjamin* v. *Hull*, (17 *Wend.* 437,) upon the authority of *Baker* v. *Freeman*, (*supra.*)

But if the action be sustainable on the facts assumed in the objection, it becomes material to inquire, in the next place, whether the teacher was legally discharged on the 3d of Feb-

ruary; and whether such discharge was not subsequently waived by the trustees, and the original contract resumed.

It is not disputed, that the teacher was regularly employed on the 13th of November, 1848, for three months, and for four months if desired; and that he was at that time a qualified teacher, having the certificate of the town superintendent of the town of Stockholm. He continued such teacher until the 23d of February, up to which time the rate-bill is made out, unless the transaction of the 2d and 3d of February amounted to a valid discharge. The 37th section of the amendatory school act of 1847, (*L. p.* 690,) authorizes the town superintendent to annul any certificate given by him or his predecessor in office, when he shall think proper, giving at least ten days' previous notice in writing to the teacher holding it, and to the trustees of the district in which he may be employed, of his intention to annul the same. The 39th section provides that the annulling of a certificate shall not disqualify the teacher to whom it was given, until a note in writing, containing the name of the teacher, and the time when his certificate was annulled, shall be made and filed in the office of the town clerk. The 36th section requires that the certificate of qualifications to be furnished a teacher, shall be signed by the town superintendent, and be in such form as shall be prescribed by the state superintendent. It is required to be in writing. The order annulling the certificate must also be in writing, as is plainly to be inferred by the terms of the 39th section.

The town superintendent failed to comply with these requisites. From his own testimony, as stated in the return, it appears that on the 2d day of February, he gave notice to the teacher and trustees, that he intended to annul the certificate; and on the 7th, a similar notice to the town clerk, to be filed in the town clerk's office, and to take effect on the 12th of February. It is true, he says, that he examined the teacher on the last of January, and "decided him incompetent," "and annulled his certificate;" but the manner in which he did it is as stated above. He, doubtless, formed the mental conclusion, that he would annul the certificate, and gave notice to that effect.

Finch *v.* Cleveland.

This was not a compliance with the provisions of the law. A notice of an intention to do an act, is not an actual performance of the act. The object of the statute, in requiring notice, was to fulfill the great requirement of justice, that no man shall be condemned unheard. The parties were entitled to a day before the superintendent, of which they were to have ten days' notice. To the teacher, it was a matter of deep concern, that he should have an opportunity of resisting a sentence of degradation, affecting his character and his prospects of usefulness in life. The trustees also had an interest in knowing whether they had a qualified teacher or not. It does not appear that the superintendent made any order, at the expiration of the ten days mentioned in the notice. The contrary is conclusively to be inferred from the fact, that he left the state on the 7th of February, and did not return until three weeks afterwards. It follows, then, that the certificate of the teacher was not legally annulled on the 3d of February, nor, indeed, on any day in that month.

The trustees had no power to dismiss the teacher without cause, and against his consent, before the expiration of his contract. The only cause assigned, was the alledged annulling of his certificate, on the 2d of February, by the town superintendent. As the certificate was not, in fact, annulled, there appears to be no cause for the act in question. We are not aware of any law which vests the trustees of a school district with power, at their own pleasure, and without just cause, to put an end to the contract of a teacher, before the time limited for its expiration.

The act which is claimed to be a discharge of the teacher was very irregularly performed, against the opinion of one of the trustees, and probably of a majority of the district. But that act, whether a valid discharge or not, was subsequently waived by the trustees. The teacher, at the instance of one of the trustees, continued the school to the end of his term. A majority of the scholars attended the school to the end. The trustee by whose instrumentality the alledged dismissal took place, resigned his office on the 7th of February, having held it long

enough to eject the teacher. His place was supplied by another, elected by the district, who, agreeing with the one who dissented from the removal of the teacher, formed with him a majority of the board. They suffered the teacher to remain through his term, received from him the school list kept by him, and from it made out the warrant and tax list. They received the public money and paid the teacher. These acts were a waiver of the irregular dismissal of the teacher on the 3d of February, if such waiver was necessary. They amount to a distinct recognition of the rights of the teacher, and a repudiation by the appropriate authority of the district, of the transaction of the third of February.

It is again objected, that the rate bill and warrant were void, because thirty days had not elapsed between the time of making them out and delivering them to the collector. The 83d section of the act, (*p.* 700,) requires the trustees, after the rate bill shall be made out and signed, to cause notice thereof to be signed by them and posted in their district, as directed in the case of the collection of district taxes; and it is made the duty of the trustees, or one of them, or the teacher to whom the moneys in such rate bill are payable, at any time thereafter, to receive payment from any person named therein, &c. &c. and by the 82d section, sub. 14, the trustees are required, after the expiration of the said thirty days, to deliver such rate bill, with the warrant annexed, to the collector, who is required to execute the same, &c. The proof is, that the warrant and rate bill were made about the 15th of March, and left with one of the trustees; and the requisite notices were also put up thirty days before it was issued. The warrant was dated the 16th of April, when it was delivered to the collector. Whether it was signed at the time it was made out in March, or not until April, when it was issued, was not distinctly proved. If it was material that it should have been actually signed thirty days before it was delivered to the collector, the justice was authorized to find that fact from the evidence. The material requirement is the making up the rate bill, and giving notice thirty days before the process is issued. That was done in this case. The war-

rant was also signed before it was issued. The substantial directions of the statute were complied with. At any rate the warrant was not void because the trustees omitted, if they did omit, the signing thirty days before the process was issued. The date is immaterial. The time when the thing was done can be shown, notwithstanding the date. · The object of the statute is to afford the persons assessed an opportunity for thirty days, to pay their respective rates, without costs. This opportunity was afforded them.

From the foregoing considerations, it is obvious that the trustees did not contravene the law, when they issued the warrant in question ; and if they are protected, much more is the defendant Cleveland, the collector, who acted under them. It was enough for him, that the trustees had jurisdiction of the subject matter, and of the persons assessed, and that the bill and warrant were regular on their face. (*Savacool* v. *Boughton,* 5 *Wend.* 170. *Sheldon* v. *Van Buskirk,* 2 *Comst.* 473.)

The judgment of the county court of St. Lawrence county must be reversed, and that of the justice affirmed.(*a*)

(*a*) See *Munson* v. *Hagerman,* (5 *How. Pr. Rep.* 223 ;) *Selkirk* v. *Waters,* (*Id.* 296.)