SPRAGUE and others vs. BROWN.

PLEADING AND PRACTICE. *(1) What complaint against sheriff for act of deputy should show; when objection to it must be taken.*

SHERIFF AND DEPUTY SHERIFF. CONVERSION. *(2) When one a sheriff de facto, and liable as such. (3, 4) When sheriff liable for acts of one acting as his deputy. (6) Sheriff de facto concluded by recital in his bond. (7) EVIDENCE, by parol, that officer levied on the goods in controversy. (8) MEASURE OF DAMAGES, for conversion, where owner purchases back the goods.*

CONSTITUTIONAL LAW. *(5) Power of governor to appoint sheriff.*

1. In an action against a sheriff for the conversion of plaintiff's goods, seized by the deputy sheriff, on execution against a third person, since the judgment in the action may affect the sureties, and constitute the basis of an action against the deputy, the *specific facts* rendering defendant liable for the acts of his deputy should be pleaded. But an objection to the complaint in such an action, for its failure to set forth such facts, cannot be taken for the first time in the appellate court.

2. If one duly elected sheriff qualifies by filing his official oath and bond, and thereupon enters on the duties of the office and exercises its functions, he is sheriff *de facto*, and his right to the office cannot be successfully attacked in a collateral proceeding, and still less can he protect himself from official responsibility, upon the ground that he failed to qualify in due time under his election, and that he qualified under an invalid appointment by the governor, or that his bond is defective.

3. If the sheriff appoints a deputy, and files the appointment with the clerk of the proper court (though without having it recorded), that is sufficient, the statute requiring the appointment to be recorded (R. S., ch. 13, sec. 101), being merely directory. And it is very doubtful whether, for the purpose of avoiding liability for the acts of one appointed by him as deputy, and known by him to be acting as such, the sheriff could be heard to deny that he was such deputy.

4. If the deputy sheriff so appointed, while acting as such, levies on the goods of B. as the property of A. (under an execution against the latter), and sells them, the sheriff is liable to B. as for a conversion of the goods.

5. Sec. 13, ch. 14, R. S., which in terms authorizes the governor to appoint some suitable person to perform the duties of sheriff for the time being, when there is no officer duly authorized to perform them, is valid, and not in conflict with sec. 4, art. V of the state constitution.

6. A sheriff *de facto* is concluded by the recital in his official bond that he was appointed by the governor, in the absence of any other proof on that subject.

7. A sheriff is not required by the statute to indorse upon an execution *issued out of the circuit court*, or return therewith, an *inventory* of the property which he levies upon and sells by virtue of the writ; and in an action against the sheriff for a conversion, plaintiff may show by parol evidence that defendant's deputy, as such, levied upon and sold *the goods in controversy* by virtue of an execution against a third person.

8. Plaintiffs having purchased back their goods from a stranger, who bid them off at the execution sale, the measure of their damages is the sum thus paid (not greater than the market value); in addition to which they might have recovered any special damages suffered from the unlawful taking, if any such had been alleged and proven.

9. The only error in the record being in the rule of damages given to the jury, the cause is remanded with directions to render judgment for the plaintiff for a certain sum (appearing from the evidence to be recoverable as damages under the correct rule), provided plaintiffs remit the amount awarded by the jury in excess of that sum; otherwise, to grant a new trial.

APPEAL from the Circuit Court for *Clark* County.

Action for the alleged conversion by defendant of an iron safe of the value of three hundred dollars, the property of the plaintiffs. The complaint is in the usual form, merely charging such conversion, without stating the particulars thereof. The answer is a general denial.

The evidence showed that the defendant was the acting sheriff of Clark county when the cause of action accrued, and one Follett was his deputy ; that an execution on a judgment of the circuit court for Milwaukee county in favor of Atkins, Steel & White against La Flesh & Summerside, was duly issued to the sheriff of Clark county, and put into the hands of Follett, June 17, 1874; that Follett, by virtue of such execution, seized the safe in controversy, on the same day, and, after due notice, sold the same as the property of the execution debtors; and that one Kirkland purchased the safe at such sale for $105, and, about the time this action was commenced, sold and delivered it to the plaintiffs for $118. Kirkland testified that he purchased the safe on his own account, and there is no evidence that plaintiffs had any interest in

such purchase. The testimony also tended to show that the plaintiffs were the owners of the safe when Follett seized and sold it, and that it was worth $300.

The plaintiffs introduced the following record evidence: 1. The official oath and bond of the defendant as sheriff of Clark county, dated February 27, 1873, and filed in the office of the clerk of the circuit court for that county. The bond contains a recital that on February 21, 1873, the defendant was appointed such sheriff by the governor, to fill a vacancy. It does not appear whether the sureties in such bond were freeholders. 2. The statement of the board of canvassers of Clark county, recorded in the proper office, showing that the defendant was duly elected such sheriff at the general election held in November, 1872. 3. The appointment of Follett by the defendant as deputy sheriff, dated February 28, 1873, and filed (but not recorded) in the proper office. 4. A certified copy of the execution by virtue of which Follett seized and sold the safe. Objection to the evidence was overruled.

The instructions which the court gave to the jury are sufficiently stated in the opinion. The jury found for the plaintiffs, and assessed their damages at $312.95. A motion for a new trial was denied, and judgment was entered pursuant to the verdict.

The defendant appealed from the judgment.

The cause was submitted on the briefs of *R. J. McBride*, for the appellant, and *S. N. Dickinson* and *O'Neil & Sheldon*, for the respondents.

For the appellant it was argued, among other things, 1. That the defendant's official bond and oath were not admissible in evidence. (1) Because the complaint does not disclose that the alleged liability of the defendant arose from the fact that he was sheriff, and the acts complained of those of his deputy acting as such. (2) Because the bond showed on its face that defendant was appointed by the governor. The governor has no authority to appoint a sheriff under any circum-

stances (Const. Wis., art. VI, sec. 4, and art. XIII, sec. 9), and, this being so, such appointment was absolutely void, gave no color of title, and did not make defendant a sheriff even *de facto*. *People v. Albertson*, 8 How. Pr., 363; *People v. Blake*, 49 Barb., 11; *People v. Carter*, 29 id., 208; 60 id., 234. 2. That the court erred in allowing Follett to testify as to his doings under the execution, when it affirmatively appeared that he had made a return thereon in writing. The return was a part of the record of the cause in which it was made (*Woodward v. Harbin*, 1 Ala., 106; *McDade v. Mead*, 18 id., 214; *Hobson v. Doe*, 4 Blackf., 487; *Gillespie v. Splahn*, 1 Wilson (Ind.), 228; *Rand v. Hadlock*, 6 N. H., 514), was conclusive (*Sheldon v. Paine*, 10 N. Y., 398), and was the best evidence. *Ayers v. Duprey*, 27 Tex., 593. 3. That the court erred in charging that the prices at which the safe had been sold at various times were no guide to the jury in determining its market value. *Ford v. Smith*, 27 Wis., 261; *Campbell v. Woodworth*, 20 N. Y., 499; *Gill v. McNamee*, 42 id., 44; 12 Mich., 180; *Dixon v. Buck*, 42 Barb., 70; *Abbey v. Dewey*, 25 Pa. St., 413; *Crounse v. Fitch*, 23 How. Pr., 358; *Arnold v. Kelly*, 4 West Va., 642; Sedgw. on Dam., 502.

For the respondents it was argued, 1. That the defendant's oath and bond under his appointment by the governor were competent to show that he was sheriff *de facto*. *In re Boyle*, 9 Wis., 264; *State v. Bloom*, 17 id., 521; *Laver v. McGlachlin*, 28 id., 364; *State v. Bartlett*, 35 id., 287; 38 Conn., 449. 2. That the statute does not require the sheriff's bond to state that the sureties are freeholders (Tay. Stats., 319, §§ 139, 141), and defendant is estopped from setting up any informality in his bond as against third persons. Dillon on Mun. Corp., §§ 154, 155, and notes 2, 4; *United States v. Bradley*, 10 Pet., 343. 3. That defendant, having exercised the office of sheriff *de facto*, would not be heard in an action of this kind to deny that he was sheriff. 4. That the testimony as to the doings of

Follett under the execution was admissible. Where the record appointed by law is not a part of the fact to be proved, but merely a collateral or subsequent memorial of the fact, any other legal proof is admissible. 1 Greenl. Ev., § 86; 1 Phil. Ev., 586, C. & H.'s Notes, 171.

Lyon, J.   I. We think that the plaintiff should have set forth in his complaint the specific facts which, he claims, render the defendant liable for the acts of his deputy.   The judgment may affect the sureties of the defendant, and may constitute the basis of an action against the deputy; and it seems proper that the complaint should show affirmatively that the cause of action is an act done by the deputy by virtue of his office, to the end that, in a contest between other parties growing out of the judgment, the record may show the true grounds of the recovery.   It is true, there are cases which hold a different rule.   *Curtis v. Fay*, 37 Barb., 64; *Poinsett v. Taylor*, 6 Cal., 78.   In those cases the maxim, *qui facit per alium, facit per se*, is held applicable.   This maxim is ordinarily applicable to a case where the defendant is sued for the act of his agent.   In such a case it seems to be sufficient to aver generally that it was the act of the defendant.   *Brown v. Worden*, 39 Wis., 432; *Bennett v. Judson*, 21 N. Y., 238. But, for the reasons above indicated, we think that this rule is not applicable to the present case, and that a more specific statement in the complaint of the facts relied upon as grounds of recovery should be required, if the objection be seasonably made.

On the trial, certain specific objections were taken to the proofs offered to show the official character of the defendant; but none of them went to the form or sufficiency of the complaint, and the objection is made for the first time in this court, that the facts are not stated which render the defendant liable for the acts of his deputy.   We think the objection comes too late.   Undoubtedly the complaint states a cause of

action in trover; and the objection should have been made on the trial, so that the plaintiff might have had an opportunity to apply to the court for leave to supply the defect by amendment. In the absence of such objection, the plaintiff might well rely upon his complaint in its present form.

II. The learned circuit judge instructed the jury, in substance, that if the defendant was elected sheriff of Clark county at the general election held in 1872, and qualified by filing his official oath and bond (although after the time prescribed therefor by law), and if he thereupon entered upon the discharge of the duties of such office, and exercised the functions thereof, he was sheriff *de facto* of that county; that if, during the time he was so acting as sheriff, the defendant appointed Follett as his deputy, and filed such appointment with the proper clerk of the court, and if Follett entered upon the discharge of the duties of deputy sheriff to defendant's knowledge, and continued to act as such, the defendant was liable to third parties for the acts of Follett within the scope of his authority as deputy sheriff; and that if Follett, while so acting, received the execution commanding him to levy on the goods of La Flesh & Summerside, if such execution was fair on its face, and if, by virtue thereof, he levied on the safe in suit as the property of the execution debtors, and sold it as such, the defendant is liable in this action, provided the plaintiffs actually owned the safe at the time of such levy.

We think these instructions state the law of the case correctly. Under former decisions of this court, cited in the brief of counsel for the plaintiffs, we cannot doubt that the facts hypothetically stated in the instructions, and which the jury must have found were proved, constituted the defendant sheriff *de facto* of Clark county. Indeed, there is no conflict in the testimony as to those facts, and the court might properly have instructed the jury that the defendant was sheriff *de facto* of that county when Follett seized and sold the safe. It is quite immaterial if he failed to qualify in due time under

his election, and qualified under an appointment by the governor, or if his bond is defective. It is sufficient that he exercised the functions of the office under color of legal authority, and his right to the office cannot be successfully attacked in a collateral proceeding. Much less, after exercising the functions and enjoying the emoluments of the office, unchallenged, can the defendant be heard to allege that he was only a usurper of the office, and thereby shield himself from official responsibility.

Moreover, we are clearly of the opinion that the statute which authorizes the governor to appoint some suitable person to perform the duties of sheriff for the time being, when there is no officer duly authorized to perform the same (R. S., ch. 14, sec. 13), is a valid law; notwithstanding the constitution (art. VI, sec. 4) provides that sheriffs shall be chosen by the electors, and fails to confer the power of appointment on the governor in any case. It would be too strict a construction of the constitution, to hold that in cases where it is silent the legislature has no power to provide against an entire suspension of the functions of any public office, when the office has become vacant, and there is no officer authorized by law to perform those functions. Such a construction would be intolerable; and we cannot believe that it was contemplated by the convention which framed or the people who adopted the constitution.

The apointment of the defendant by the governor to act as sheriff for the time being was not put in evidence; but the defendant is concluded by the recital of such appointment in his official bond, and cannot now, in the absence of any proof on the subject, be heard to deny that he was so appointed. Hence, for the purposes of this case, he was not only sheriff *de facto* but *de jure*.

The responsibility of the defendant as such sheriff extends to all official acts, and to any default or misconduct in office, of his deputy. R. S., ch. 13, sec. 100 (Tay. Stats., 320, § 144).

The acts of Follett in levying upon and selling the safe in question as the property of La Flesh & Summerside, if it was in fact the property of the plaintiffs, were clearly acts for which the defendant is responsible to the plaintiffs.

It is scarcely necessary to say that the filing of the appointment of Follett in the proper office was sufficient. The statute requiring it to be recorded also (R. S., ch. 13, sec. 101) is merely directory. Moreover, it is very doubtful whether a sheriff can be heard to allege that one whom he has appointed his deputy, and who, he knows, is acting as such, is not his deputy, and thus shield himself from responsibility for the official acts of his appointee.

III. The court admitted parol proof that Follett held the execution as deputy sheriff, and levied upon and sold the safe by virtue thereof. This testimony was objected to by the defendant, on the ground that the return of the officer on the execution should show these facts, and that parol evidence thereof was inadmissible.

The statute (R. S., ch. 134, sec. 15) requires the sheriff to indorse on the execution the time when he received it; but we find no statute which requires him to indorse upon an execution issued out of the circuit court, or return therewith, an inventory of the property which he levies upon and sells by virtue of the writ. The law is different in respect to executions issued by a justice of the peace. R. S., ch. 120, sec. 191. We perceive no valid reason why it was not competent in this case for the plaintiff to show by parol that Follett levied the execution upon the property in controversy, and sold the same as the property of the execution debtors. What the rule would be, were the sheriff required by law to return such inventory, is not here determined.

IV. The only remaining question which we deem it necessary to consider is, What is the correct rule of damages, in view of the special circumstances of the case? The jury were instructed that it was the market value of the safe at the

place and time it was seized.    To this no exception was taken. The learned circuit judge proceeded with the instruction as follows:    " There is evidence tending to show that this safe was sold four or five times; first, that it was sold for $275 to La Flesh & Summerside; afterwards for $300 to the plaintiffs in this case; next for $105 to the witness Kirkland, at forced sale; and then that the witness Kirkland sold it to the plaintiffs for $118.    There is some evidence tending to show that the plaintiffs had bargained it to some other parties for $200. Now if that were any guide for you to take in determining the market value of this safe, you could not tell what it would be worth."    This portion of the instruction was duly excepted to.    We are inclined to think that the exception is sufficient to raise the question of the rule of damages.

It will be borne in mind that the plaintiffs obtained the safe under their purchase from Kirkland, who bought it at the sheriff's sale on his own account.    Had they purchased it at such sale under protest, all of the authorities agree that they could still maintain this action, and that the measure of their damages would be the price they were compelled to pay for it. Sedgwick on Damages (6th ed.), 614; *Ford v. Williams*, 24 N. Y., 359; *Murray v. Burling*, 10 Johns., 172; *Baker v. Freeman*, 9 Wend., 36; *Hurlburt v. Green*, 41 Vt., 490; *McInroy v. Dyer*, 47 Pa. St., 118.    It should be observed that where the property is thus bid off by the true owner, probably he would not be allowed to recover more than its fair market value, although he should pay a greater sum to obtain possession thereof; and that he may recover any special damages, in addition, which he has suffered intermediate the conversion and return of such property.    But it seems that such special damages should be stated in the complaint. Sedgwick, *supra.*

The foregoing cases rest upon the propositions, that in these actions damages are to be assessed upon equitable principles, and that the sum paid to obtain possession of the property

wrongfully converted is a just and full compensation for the wrong suffered by the owner. It seems to us that the same principles should be applied to this case. Although the plaintiffs did not bid off the safe at the sheriff's sale, yet they obtained possession of it by paying $118, and they do not allege and have not proved any special damages. We hold, therefore, that the latter sum is the true measure of damages, and the jury should have been so instructed.

There is another probable reason why the plaintiffs should not be permitted to recover the full value of the safe. Mr. Sedgwick says: "If the plaintiff recovers the value of the property, and the judgment is satisfied, there would seem to be no doubt that the title to the property should and does vest in the defendant, he having paid its value. * * And the better opinion would appear to be, that if the judgment is not for the value of the property, or if it remain unpaid, the title is unaltered." (p. 620.) If the law is here stated correctly (as undoubtedly it is), a judgment for the full value of the safe, and satisfaction thereof, might vest the title thereto in the defendant, and he might be driven to an action against the plaintiffs to recover possession of it, which would manifestly be unreasonable and unjust.

For the error in the rule of damages, the judgment must be reversed; but inasmuch as we find no other error in the record, another trial is not absolutely necessary. The cause will be remanded with directions to the circuit court to give judgment for the plaintiffs for $118 and interest thereon from the commencement of the action, provided the plaintiffs remit the excess of the damages assessed by the jury over that sum; and if they do not so remit, then with directions to award a *venire facias de novo*.

*By the Court.* — So ordered.