RICHMOND *v.* BREWSTER *et al.*

(*City Court of New York, General Term.* September, 1888.)

1. BAILMENT—SALE BY BAILEE FOR LIEN—BURDEN OF PROOF.
    In an action for the value of a carriage sold to pay a storage lien, where plaintiff admits that defendants held it subject to a lien for storage, the lien will be presumed to continue until it is proved to have been paid.

2. SAME—LIABILITY OF BAILEE FOR PRICE.
    Where the point in dispute is whether the price offered for the carriage was to be submitted to plaintiff before selling, it is error to charge that if the jury find that plaintiff was the owner of the carriage they must find the value of it for her; as defendants will be liable only for the price received, if they had unlimited authority to sell.

3. SAME—HUSBAND AND WIFE—OWNERSHIP OF PROPERTY—EVIDENCE.
    Where it appears that plaintiff's husband bought the carriage, paying for it partly in cash and partly in his own notes, she is incompetent to testify that her husband, who was dead at the time of trial, was her agent in the purchase, and her statement, "It is mine, and I paid for it," is a conclusion only, and not evidence of ownership.

4. APPEAL—REVIEW—GENERAL TERM OF CITY COURT.
    On appeal to the general term of the city court from an order denying a new trial errors may be reviewed, though not excepted to.

Appeal from trial term.

Action by Rosalind C. Richmond against J. B Brewster & Co. for the value of a carriage sold by defendants for storage charges. Judgment was entered on a verdict for plaintiff for $900, and defendants appeal.

Argued before NEHRBAS, MCGOWN, and PITSHKE, JJ.

*Wm. F. MacRae,* for appellants.    *A. A. Redfield,* for respondent.

PITSHKE, J.   The complaint is framed on a breach of contract. The recovery was on a procedure as in tort, and not on the theory of the complaint. The chief contention on the trial and main point of the case was whether the sale of the carriage on storage with defendants was to be for a price to be first approved by the plaintiff, or whether defendants had an unlimited power to sell for the carriage-owner. It was actually sold for $500 by the defendants. The complaint admits that the carriage was held by defendants subject to a lien for storage charges. It was mutually understood between the parties that defendants were to sell this vehicle, the only reservation by plaintiff, at most, being in regard to the price. If properly sold under their authority, the defendants would be liable only for the price realized; if the sale was contrary to plaintiff's instructions, then defendants would be liable for the value of the carriage, no matter what it brought. Plainly, in either alternative, their amount of lien for storage charges and expenses of sale could be retained and claimed by defendants, because the sale, in either event, would be subject to that.   The complaint, together with the law on "storage," showed the evidence of such a lien, and the ruling of the court shutting out the storage-claim against this carriage, duly excepted to, was error.   The lien continued until proved to have been paid, on which the plaintiff had the burden of proof. If plaintiff got by the jury the full value of the chattel, the defendants are also entitled to get their unpaid storage charges and sale expenses by deduction from such verdict for plaintiff, whether for the price realized or the value that should have been realized.

The exception to the part of the charge that if plaintiff was found to be the owner of the carriage the jury should give her a verdict, and for the sum they thought the vehicle was worth, is also well taken.   This was not so, if the

price offered need not be submitted to plaintiff before selling; and the defendants maintained there was no such requirement to first submit each offer to her. This denial of defendants the court (instead of the jury finding thereon) simply assumed to be untrue, and it did not in charging refer to this point at all. Yet this was the turning-point of the case.

These errors on essential matters would alone demand a reversal. But there is a more serious objection at the very threshold of the case. One of the issues on the record is whether the carriage was the property of plaintiff; if not, she cannot recover its value on suing for a wrongful sale without authority. It appeared uncontradicted in the evidence that plaintiff's husband went to Brewsters' (defendants) and bought the carriage in 1878, and she never saw a bill from Brewsters of its purchase. Her husband made payment for it to the Brewsters, and he paid for it in cash and notes; that is, in his own notes. Clearly, this testimony showed the husband was the carriage purchaser, and the carriage apparently his property. Plaintiff, to overcome this, claims her husband was deputed by her as agent to make the purchase for her, in fact, and she gave her husband the money to buy it with, and that it was her money he passed to the Brewsters. But these assertions about her being the real party who furnished the purchase price to her husband, and that he was to act as her agent in buying, are not legal evidence. It concerns some personal transaction and communication between her and a decedent, and she thereby swore in her own behalf against the executrix of her husband, (deceased before the trial,) she endeavoring to thereby wrench the recovered "value" (apparently her husband's) from the estate of her husband and his creditors, to herself individually. *Koehler* v. *Adler*, 91 N. Y. 657, 658; *Tooley* v. *Bacon*, 70 N. Y. 37; *Grey* v. *Grey*, 47 N. Y. 552; *Clarke* v. *Smith*, 46 Barb. 30; Code Civil Proc. § 829. She was the executrix under her husband's will. Her statement, "It is mine, and I paid for it," is a conclusion, and is destroyed by the above testimony showing the actual details of the transaction. The exception to this matter was likewise well taken by defendants. Plaintiff could only testify as to occurrences and acts between herself and the Brewsters people, or other living persons, material to the controversy. She could not say directly or by implication that it was her money that passed from Mr. Richmond, her husband, to the defendants at the purchase of the carriage. She was not there. It will not be necessary to allude to the other exceptions on said trial.

On an appeal from an order denying a new trial the general term inspects the whole record and evidence, upon the law as well as the facts, and should correct every substantial error disclosed, showing that justice has not been done, although not excepted to. *Wasilewski* v. *Wendell*, 9 N. Y. St. Rep. 508. The general term has with respect thereto all the power of the trial term of the same court. Baylies, New Trials, 125; *Hamilton* v. *Railroad Co.*, 53 N. Y. 27; *Mandeville* v. *Marvin*, 30 Hun, 288. Such is the rule where the verdict was rendered upon incompetent testimony admitted without exception, as also where the verdict is perverse, excessive, or contrary to the law or the evidence, but no exception was taken. *Maier* v. *Homan*, 4 Daly, 168; *Oil Co.* v. *Insurance Co.*, 79 N. Y. 506. And in case the "charge" was erroneous, it is likewise reviewable without any exceptions. *Lattimer* v. *Hill*, 8 Hun, 172. For all such errors the general term has full authority to grant relief and direct a new trial. It is only in appeals from a court to another and different court that judgments can be reviewed and new trials granted solely for errors pointed out by exceptions taken at the proper time. 79 N. Y. 506, *supra*. For the errors committed on the trial, as above shown, the verdict rendered cannot be sustained, and the judgment and order appealed from should be reversed and a new trial granted, with costs to abide event.