·(5 Misc. Rep. 20.)

### MOORE v. BATTEN, Sheriff.

(Supreme Court, Special Term, Erie County. August, 1893.)

:1. TROVER AND CONVERSION—EVIDENCE.

> In an action for conversion it appeared that one B., who resided in Canada, made an assignment for benefit of creditors, and that plaintiff, his brother-in-law, under an agreement with the creditors, paid them 30 per cent. of their claims, and took the assigned property, including B.'s household goods, of which plaintiff allowed him to retain possession. Afterwards B., in his own name, shipped the household goods, together with some articles belonging to his wife, to New Jersey, where he intended to reside. When the goods reached New York, they were seized by defendant, as sheriff, under execution in favor of W., one or B.'s creditors, who had accepted plaintiff's offer. The goods were bid in at the execution sale by S., a cousin of B., and reshipped to their destination in New Jersey. S. testified that he bought the goods for himself; also that he bought them because they belonged to his cousin, and that he expected to save them for the B. family. *Held,* that the question whether S. purchased for B. should have been submitted to the jury, as affecting the measure of damages.

·2. NEW TRIAL—FAILURE TO TAKE EXCEPTIONS.

> Where it is apparent that great injustice has been done, a new trial may be granted, either by the general or special term, though the question was not presented by any exception.

Action by George G. Moore against George Batten, as sheriff, for conversion. There was a verdict in favor of plaintiff, and defendant moves for a new trial on a case and exceptions. Granted.

E. M. Ashley, for plaintiff.
Frank Brundage, for defendant.

HAIGHT, J. This case has been twice tried. The first trial resulted in a nonsuit, but it was sent back for a new trial by the general term. Moore v. Batten, 14 N. Y. St. Rep. 191. Upon the second trial a verdict was directed in favor of the plaintiff for

the value of the goods. Clinton E. Brush and Seeley B. Brush were dry goods merchants doing business under the firm name of C. E. Brush & Bro., in Toronto, Canada. On the 16th day of December, 1884, they made a general assignment to one Clarkson, for the benefit of creditors, of all of their copartnership and individual property, including the household goods of Clinton E. Brush that were located in his dwelling house in that city. Shortly thereafter, George G. Moore, a brother-in-law of Clinton E. Brush, submitted an offer to the assignee for the assigned property, in which he offered to pay the creditors 30 cents on the dollar. Thereupon the assignee called a meeting of the creditors, and at such meeting submitted to them the offer that he had received from Moore. The creditors, after considering the same, advised the assignee to accept the offer, and thereupon he executed and delivered to Moore a bill of sale of all the assigned property, dated the 30th day of January, 1885, and received therefor the 30 cents on the dollar that Moore had agreed to pay. Subsequently, Clarkson, as assignee, distributed the money so received among the creditors, the firm of Williams, Greene & Rome receiving upon their claim $311.61. Moore entered into possession of the stock of goods, but did not take possession of the household goods formerly belonging to Clinton E. Brush, but permitted them to remain in his possession, in the house occupied by him. Some of the household goods in the house belonged to Mrs. Brush. In May following, Brush packed up all of the goods, along with those belonging to his wife, and shipped them in his name to South Orange, N. J. At the customhouse at the port of Suspension Bridge he entered them as his own, and after their arrival in this state they were attached by the defendant, as sheriff of Niagara county, at the instance of Williams, Greene & Rome, in an action brought by them against Brush in this court. The action commenced by them proceeded to judgment, and on the 30th day of June thereafter the goods so attached were sold by the defendant to one Slover, under and by virtue of an execution issued upon the judgment, for the sum of $1,400; that sum being the amount of the judgment. Slover thereupon caused the goods to be reshipped to South Orange, N. J., and delivered at the residence of Mrs. Brush. Subsequently this action was brought.

It appears that Williams, Greene & Rome, or one of them, attended the meeting of creditors called by the assignee to determine whether or not the offer of Moore for the assigned goods should be accepted. They took part in the deliberations of that meeting, and subsequently, as we have seen, accepted from the assignee the 30 cents on the dollar of the amount of their claim paid by Moore. It is not claimed that there were false representations made to them by Moore, or that they were in any manner deceived by him. They have accepted his money, and, in the absence of fraud or deception, they must be deemed to be estopped from questioning the validity of his title to the assigned property.

At the close of the evidence the defendant's counsel asked the court to direct a verdict in his favor. This was refused. Thereupon he asked to go to the jury upon the question whether or not Moore purchased the property for Brush, and left it in his possession with the understanding and arrangement that it should belong to him. This was refused, and an exception taken. He also asked to have other questions submitted to the jury, but they have all been disposed of by the general term in its former review of the case. Upon such review this question was left open, with an intimation that it might be a question of fact for the jury. The court, in its opinion, says the pursuing creditors may claim, if they have evidence to support it, that the plaintiff purchased the property for the benefit of Brush, and with money supplied by him for that purpose, and that Brush's possession was that of owner. The evidence upon this trial shows that the plaintiff did leave the goods in the possession of Brush, and that Brush shipped the goods to his residence in New Jersey, in his own name. But it also appears that Moore paid for the goods out of his money, and not with the money furnished by Brush. There is no evidence tending to show that Moore intended to reinvest Brush with the title to the property, other than the fact that he left it in his possession. Brush was insolvent, and had numerous creditors. To reinvest him with the title of the goods would again render them liable to seizure upon execution. In view of the circumstances, I am not satisfied that Moore intended to reinvest Brush with the title to the property, or that such a finding could be sustained.

There is, however, another view of the case, which, it appears to me, raised a question of fact which should have been submitted to the jury. That is, were the goods bid off by Slover for and on behalf of Brush? As we have seen, Moore had purchased and become the owner of the property in question. He lived in New York city, and was a brother-in-law of Brush. After purchasing the goods, he returned to New York, leaving them in Brush's possession. Brush thereby became the bailee or agent, and his possession must be deemed to be that of Moore's. Brush shipped the goods to South Orange, N. J., in his own name. While in transit they were levied upon and sold. After the goods were levied upon, Brush went to Slover, his cousin, and got him to attend the sale, and bid in the goods. Slover bid off the goods, and caused them to be shipped on to South Orange, and delivered at the residence of Mrs. Brush. If he bid them off for Brush, it would be the same as if Brush had bid them off personally. If they were bid off for Brush, or by him, he must be deemed to have recovered the possession of the goods as such bailee or agent. He would not be permitted to divest his principal of the title, or to deal with the property in any other capacity than as such bailee or agent. Coal Co. v. Phelps, 95 Ind. 271; Bowman v. Officer, 53 Iowa, 640, 6 N. W. Rep. 28; Grumley v. Webb, 44 Mo. 444; Edw. Bailm. § 73; Ewell's Evans Ag. 343. This action was not brought until after Brush had regained the possession of the

property, and therefore it would still be the plaintiff's, and he would still have the right to reduce it to possession. The evidence is such as to make the question one for the jury. The witness Slover, in answer to the question, "Who were you buying it for?" answered: "I was buying it for the Brush family. I was buying it for myself." Subsequently he stated that he was buying it for himself. But he further testified that he expected to buy the goods because they belonged to his cousin, to save them from going into the hands of strangers; that he expected to save the goods for the Brush family; that was what he came to Lockport for. Other evidence was given, which it is not necessary to now call attention to, for it appears to me that it was of such a character as to raise a question of fact for the determination of the jury as to whether or not Slover purchased the goods for Brush. If the jury should so find, then, as we have seen, Brush would be deemed to hold the property as the agent of the plaintiff, and, if so, the measure of damages would be limited to the amount that he was compelled to pay in recovering the possession of the property, with interest thereon. Baker v. Freeman, 9 Wend. 36; Ford v. Williams, 24 N. Y. 359–366; Murray v. Burling, 10 Johns. 175; Butler v. Miller, 1 Denio, 407, 413; Vedder v. Van Buren, 14 Hun, 250; Sprague v. Brown, 40 Wis. 612–620; Hurlburt v. Green, 41 Vt. 490. It may be said that this question is not presented by any exception taken upon the trial, or by any request to submit the same to the jury. This is true; but where it is apparent that great injustice has been done, the court at general term or special term have the power to grant a new trial, even though the question is not presented by any exception. Roberts v. Tobias, 120 N. Y. 1, 23 N. E. Rep. 1105; Mandeville v. Marvin, 30 Hun, 283; Richmond v. Brewster, (City Ct. N. Y.) 2 N. Y. Supp. 400; Howell v. Manwaring, 3 N. Y. St. Rep. 454. The history of this litigation is extraordinary. Mrs. Brush brought an action against the defendant for the goods belonging to her, and has recovered a judgment of about $6,000. The plaintiff in this action has recovered a judgment of nearly $5,000, making a total recovery of about $11,000. If this judgment is permitted to stand, the defendant will be compelled to pay $11,000 for attempting to collect a judgment of $400. Under the circumstances, I think a new trial should be ordered, with costs to abide the event.